## JONES et al. v. SNYDER, Guardian.

No. 13301—Opinion Filed May 11, 1926.

Rehearing Denied Sept. 21, 1926.

(Syllabus.)

**1. Judgment—"Direct Attack" on Judicial Proceeding.**

In determining whether an action is a collateral or direct attack upon a judicial proceeding, the rule is that whenever an action to set aside a judicial proceeding upon specified grounds is authorized by law or equity to be brought for such purpose upon such grounds, and is brought upon such specified grounds and for the express and definite object of setting aside a judicial proceeding, and the parties in interest are duly summoned and given opportunity to contest the issues raised by the pleadings in such action, then such action is a direct attack and may be maintained.

**2. Bastards—Legitimation by Acts of Father.**

Where the father of an illegitimate child takes such child into his own home, cares for and provides for such child and treats it as his own, and by his acts and conduct manifests acknowledgment that such child is his, such acts and conduct are sufficient compliance with the statute to legitimize such child, whether or not the father in so many words publicly proclaims such child as his.

**3. Guardian and Ward—Guardian's Deed—Cancellation for Fraud on Court.**

Where an action is brought to set aside a

guardian s deed to the property of a minor ward, on the ground of fraud practiced upon the court in procuring the letters of guardianship and order of sale of such land, and it is clearly apparent from the evidence that such letters of guardianship and order of sale were induced and procured by and through the alleged fraud, such guardian's deed will be canceled and held for naught.

### 4. Equity—Scope of Relief from Fraud.

If by fraud and misconduct one is granted an unfair advantage in proceedings at law, where the court has been deceived and thereby made an instrument of injustice, equity will interfere to prevent the perpetrator from reaping the benefit of the advantage thus unfairly gained.

In such case it matters little as to the mode or manner in which fraud is effected. A court of equity looks to the effect and asks if the result is a consequence of the fraud.

### 5. Guardian and Ward—Deception on Court as to Jurisdiction — Setting Aside Proceedings for Fraud.

Under section 1431, C. S. 1921, the fact of notice to the father of an application for letters of guardianship and for an order of sale of the minor's property, and the fact of the domicile of the minor in question, are both jurisdictional facts, and where such facts are fraudulently concealed from the probate court, and the court is thereby deceived as to such jurisdictional facts, no jurisdiction is acquired over the subject-matter of the guardianship, and in a proper action in equity the proceedings will be set aside for fraud.

### 6. Judgment—"Extraneous" Fraud in Procurement.

Where a court is deceived and misled by a fraudulent concealment of jurisdictional facts, such fraud would naturally not appear in the record and necessarily be extraneous thereto.

### 7. Guardian and Ward—Fraudulent Guardian Sale—When Innocent Purchaser not Protected.

The doctrine of protecting innocent purchasers at judicial sales to the extent of the purchase price, even though the judicial proceedings be declared void, does not extend to guardian's sales of the property of minor wards, where the letters of guardianship and order of sale have been procured through fraud upon the probate court in jurisdictional matters and the ward has received none of the proceeds nor any benefit therefrom.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by Harry C. Snyder, as guardian of Gustava Marshall, a minor, against Frank Jones and others, to cancel certain deeds and to quiet title to certain lands described in plaintiff's petition. Decree for plaintiff, and defendants bring error. Affirmed.

McDougal, Lytle, Allen & Pryor, Ellinghausen & Ellinghausen, and Albertson & Blakemore, for plaintiffs in error.

W. T. Hunt, for defendant in error.

HARRISON, J. This was an action by Harry C. Snyder, guardian of Gustava Marshall, a minor ward, to set aside a guardian's deed to the allotment of said ward, on the ground of fraud perpetrated upon the probate court in the matter of procuring letters of guardianship and order of sale of the minor's land.

The said minor was a Creek freedman, duly enrolled as a newborn, and to whom was allotted a quarter section of land situated in Creek county, Okla. It is conceded that she was the illegitimate child of Ethel Birney, her mother, and Abednego Marshall, her father, and that the mother died in Muskogee county, in 1909. It is also apparent from the evidence that upon the death of the mother, the surviving father took said child into his home with his legitimate wife and by his every action and conduct acknowledged her to be his child, provided for and cared for her at his home in Wagoner county until the death of his wife, whereupon he placed her with and under the care of his aunt, Rose Childers, who resided in Wagoner county, and with whom the child lived continuously as the acknowledged child of Abednego Marshall for a period of several years, during which time she attended school in Wagoner county, and was afterwards placed in school in the city of Muskogee, Muskogee county; that she never for any period nor at any time lived in Tulsa county nor ever at any time even visited in Tulsa county, nor changed her domicile from Wagoner county, nor was she ever denied by her father as being his child.

It appears, however, that in April, 1910, while said minor child resided with her father and had her domicile in Wagoner county, one Frank Jones and his wife, Mabel Jones, who was an aunt of said minor, being the sister of said child's mother, both she and her husband then residing in Tulsa county, petitioned the county court of Tulsa county for letters of guardianship of the person and estate of said minor child, falsely and fraudulently alleging that said child was a resident of Tulsa county and under the care and custody of said petitioners, and

that they had incurred certain and sundry expenses in caring for and supporting said child, and that her father had never acknowledged her as being his child, and thereupon, without notice to her father, they petitioned for letters of guardianship and order of sale of the allotment of said child. And upon their false allegations and false testimony in support of same, letters of guardianship were issued to said Frank Jones, an order of sale made, and the allotment of said minor sold, and said minor defrauded out of every penny of the proceeds, neither the minor nor her father having any knowledge of the proceedings.

The records of probate proceedings, on their face, appear to be and are conceded to be regular; likewise the purchaser at said guardian's sale appears to have been and is conceded to have been a purchaser in good faith for a valuable consideration; also the grantees of said purchaser appear to have been and are conceded to have been purchasers in good faith.

But, while conceding said probate proceedings to be regular and apparently valid on their face, this action is addressed to the equity powers of the district court to set aside said proceedings and to cancel said guardian's deed because of the fraud perpetrated upon the probate court in falsely and fraudulently alleging and testifying that said minor was in the custody and under the care of said petitioners, when in truth she was not, and in alleging and testifying that said minor was a resident of Tulsa county, when in truth she was not, and in alleging and testifying that petitioners had incurred sundry items of expense in support of said minor, when in truth they had not, and in prosecuting said proceedings without notice to the father of said minor, falsely alleging and testifying that said father had never legitimatized said minor by acknowledging her to be his own child, when in truth he had so acknowledged her by every requisite act and evidence except that of publicly proclaiming, in so many words, that she was his child, and had taken her into his custody and had cared for and supported her in his home, and upon the death of his wife had placed her with his aunt in Wagoner county, and at all times exercised parental control over her.

The case was tried in the district court upon the issue as to whether fraud had been perpetrated upon the probate court, and upon the finding of facts made by the trial court judgment was rendered holding that said probate orders and decrees had been procured through fraud perpetrated upon said court and were void, and decreeing the cancellation of the guardian's deed in question, also holding all subsequent conveyances to be null and void and decreeing their cancellation as to said minor child.

The court further found and adjudged that the rental value of said lands during the period which said minor had been deprived of the use and benefits thereof was $480, for which the court gave judgment in favor of said minor against the defendants herein.

The court further found, however, that during the period from 1912 to 1920, inclusive, one of the grantees, a defendant herein, had paid taxes on said land, aggregating the sum of $268.09, and was entitled to an offset against said rents to amount of taxes paid, and rendered judgment accordingly.

In substance, the court decreed the cancellation of all instruments of conveyance pertaining to said land, in so far as they affected the rights of said minor, and gave judgment in her favor for rents to the amount of $480, less $268.09 taxes, paid by said defendant grantee. From such judgment, defendants appealed.

Two propositions are presented, a determination of which disposes of the case, viz.:

First, was the action in the district court a direct or collateral attack upon the probate proceedings?

Second. Should the purchaser at guardian's sale, being conceded to have been a purchaser in good faith and for a valuable consideration, be protected under his guardian's deed to the extent of the purchase price, though the probate proceedings be held void and the guardian's deed be cancelled?

If this action be a collateral attack, then it cannot be maintained, for the reason that the probate proceedings are conceded to be regular and apparently valid on their face and not subject to collateral attack; but if the action be an attack upon said probate proceedings on the ground of fraud practiced upon the probate court in such proceedings, and if the pleadings and judgment roll in this action show that it was brought for the express purpose and object of avoiding and setting aside such probate proceedings on the ground of the alleged fraud, then the action is a direct attack, the right to maintain which is authorized by law and universally sanctioned by equity. Pettis v

Johnston. 78 Okla. 277, 190 Pac. 681; Thompson v. McCorkle (Ind.) 34 N. E. 813, 36 N. E. 211, 43 Am. St. Rep. 334; Walker v. Goldsmith (Ore.) 12 Pac. 537, 553; Schneider v. Sellers (Tex. Civ. App.) 61 S. W. 541-43; Dormitzer v. German Savings & Loan (Wash.) 62 Pac. 862; 34 C. J. 520; 15 R C. L. p. 839; Van Fleet's Col. Attack, p. 4.

The principle may be considered as settled that whenever an action to set aside judicial proceedings upon specified grounds is authorized by law or sanctioned by equity to be brought for such purpose, and such action is brought upon such specified grounds and for the express purpose and definite object of setting aside a judicial proceeding, and the parties in interest are duly summoned and given opportunity to contest the issues raised by the pleadings in such action, then such an action is a direct attack and may be maintained. The action in question was brought for the specific purpose and definite object of setting aside the probate proceedings in question upon grounds, and in the manner which, under the decisions of this court and of other courts and textwriters, are held to be sufficient grounds for setting aside judicial proceedings. It is therefore a direct attack, and, from an examination of the record and careful consideration of the testimony, it is our conclusion that the allegations of fraud are established by the clear weight of the evidence, and that the trial court was correct in setting aside the probate proceedings and in decreeing a cancellation of the guardian's deed.

It is contended, however, that the judgment of the trial court was erroneous and should be reversed for the reason that the record fails to show that the child was ever legitimatized by acknowledgment of the father that she was his child, and that therefore the probate court was not without jurisdiction for want of notice to the father, and that the proceedings are not voidable for failure to give notice to the father. This contention is without merit, for the reason, as above stated, that the record shows sufficient acknowledgment on the part of the father that the child was his.

It is also clearly apparent that the domicile of the child was not in Tulsa county, but was in Wagoner county, and therefore the county court of Tulsa county had no jurisdiction over the minor child. Under section 1431, C. S. 1921, the fact of notice to the father and fact of the domicile of the child are both jurisdictional facts. See In re Taylor's Estate (Cal.) 63 Pac. 345; also In re Raynor's (Cal.) 16 Pac. 229; In re Danneker (Cal.) 8 Pac. 514; 15 R. C. L. 1114. The county court was deceived as to both these jurisdictional facts by a willful concealment of the truth as to such facts, and fraud was thereby perpetrated upon the court in obtaining the letters of guardianship and order of sale.

It is contended, however, that if fraud was perpetrated upon the court, it was not an extrinsic fraud, and that a court of equity will not grant relief against a judgment obtained through fraud except in cases where such fraud is extraneous and foreign to the record. At least, this is the obvious purpose of such contention, but it has no application to the circumstances which control this case. The fact that fraud was perpetrated upon the court in this case, the fact that the court was wholly deceived in matters material to its jurisdiction over both the subject-matter involved and the person of the ward in question, is conclusive from the record, and it appearing conclusively that fraud was committed, in that the court was deceived and imposed upon in said matters, we do not feel concerned in the technical distinction between intrinsic and extrinsic fraud, if in contemplation of law there is any real distinction in the effect. Fraud is fraud, whether it be denominated extrinsic or intrinsic.

Webster defines it as a deception practiced with a view to gaining an unlawful and unfair advantage, and defines it as synonymous to deception, deceit, guile, subtlety, craft, wile, sham, circumvention, strategy, trickery, imposition, cheat. The courts have defined it as a perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him, or to surrender a legal right; a false representation of a matter of fact (whether of words or conduct by false or misleading allegations or by concealment of that which should have been disclosed) which deceives another so that he would act upon it.

In equity, the law term "fraud" has a wide sense, and includes all acts, omissions, or concealments by which one person obtains an advantage against conscience over another, or which equity or public policy forbids as being to another's prejudice. See 3 Words & Phrases. 2955; 12 R. C. L. subject "Fraud"; 26 C. J. 1059.

"If by fraud and misconduct, one has gained an unfair advantage in proceedings at law, whereby the court has been made an instrument of injustice, equity will interfere to prevent him from reaping the benefit of

the advantage thus unfairly gained." 15 R. C. L. 761, citing Johnson v. Waters (U. S.) 28 L. Ed. 547; Litchfield's Appeal (Conn.) 73 Am. Dec. 662; Tyler v. Hamersley (Conn.) 26 Am. Rep. 479; Hibbard v. Eastman (N. H.) 93 Am. Dec. 467; Scoville v. Brock (Vt.) 118 A. S. R. 975.

And this rule is applicable both in regard to judgments at law and decrees in equiy, and a court of chancery in both instances will interfere to restrain the use of the advantage gained. 15 R. C. L. 761; Bridgeport Sav. Bank v. Eldredge (Conn.) 73 Am. Dec. 688.

In the matter of obtaining the orders and judgment of the probate court in the instant case every material allegation and all material testimony were false and fraudulent, both warp and woof.

"It matters little as to the mode or manner in which fraud is effected. A court looks to the effect, and asks if the result is a consequence of fraud." 15 R. C. L. 761 Ferrall v. Bradford (Fla.) 50 Am. Dec. 293.

The authorities cited on the doctrine that courts of equity will not interfere for the purpose of correcting mere errors in judgment or errors of law committed in the course of a trial have no application here. The fraud complained of here was a fraud perpetrated upon the court itself, and in answer to the attempted distinction between intrinsic and extrinsic fraud, we deem it sufficient to say that had the probate court in the instant case known that a deception was being perpetrated upon it, and had the necessary parties been before the court and been given an opportunity to try out the issue between the applicant and the father of the child, as to whether or not the child had been legitimized, and whether or not the domicile of the child was in Tulsa county, the case would have presented a different aspect, but the court did not know of the deception, was not aware that a deception was being perpetrated upon it, but these matters were fraudulently concealed from the court, hence it did not try the issue between the father, who was a necessary party, and applicant for letters of guardianship, as to whether or not the child had been legitimized, but was deceived and misled by this concealment, and therefore the fraud thus perpetrated upon the court would naturally not appear in the record, and necessarily be extraneous thereto. The fraud being concealed from the court, it would naturally not be in the record, and necessarily be extraneous thereto. Therefore. the contention as to the distinction between extrinsic and intrinsic fraud has no application in this case.

As to the second proposition, it appears to have become the rule in this state that innocent purchasers at judicial sales, where the consideration is reasonably adequate, will be protected to the amount of the purchase price, even though the judicial proceedings be set aside.

This court, for reasons which do not appeal to the writer hereof as sound, has adopted and adhered to the rule that for reasons of public policy, the obligation of the state to protect innocent purchasers. where the consideration is adequate, is a paramount one. and this doctrine has been in a measure extended to the protection of innocent purchasers against infant heirs whose property has been fraudulently sold at guardian's sale.

A leading and strongly reasoned case on this question is that of Allison v. Crummey. 64 Okla. 20, 166 Pac. 691. And the decisions in Scott v. Abraham, 60 Okla. 10, 159 Pac. 270, and Langley v. Ford, 68 Okla. 83, 171 Pac. 471, hold practically the same view. but the writer is unable to see wherein any obligation of the state could be paramount to that of protecting minor children against being defrauded of their property. In such case the purchaser, though innocent of any participation in or knowledge of fraud, and though paying an adequate price. does so at his own option, and in the exercise of his own free will and judgment, because he thinks he is getting a bargain. He is not forced to buy, he has the privilege of either buying or letting it alone; but in the belief that he is getting a bargain in the transaction, prompted by desire to drive a good bargain, and in the exercise of his own free judgment, he voluntarily pays his money for the property. On the other hand, the infant child is not only equally innocent. but is utterly helpless to protect itself. It has no option, no voice whatever in the transaction; it is not permitted by law to even raise a voice in its own behalf against the fraud, but, like a helpless lamb, is led to the slaughter and the law will not hear its cry.

For these reasons, we hold that the rule of protecting innocent purchasers at guardian's sale to the amount of the purchase price, even though the sale be declared void, does not extend to guardian's sales where the letters of guardianship and order of sale have been procured through fraud upon the probate court in jurisdictional matters and the ward has received none of the proceeds nor any of the benefits therefrom.

Judgment affirmed.

MASON, LESTER, PHELPS, and CLARK,

JJ., concur. BRANSON, V. C. J., dissents; HUNT, J., disqualified; NICHOLSON, C. J., absent.