DAVIS et al. v. PENNSYLVANIA CO. FOR INSURANCE ON LIVES AND GRANTING ANNUITIES, Ex'r, et al.

No. 28953. Feb. 13, 1940.

Rehearing Denied March 19, 1940.

Second Petition for Rehearing Denied June 18, 1940.

*103 P. 2d 380.*

Busby, Harrell & Trice, of Ada, Ramsey, Martin & Logan, of Tulsa, and Kauffman, Tuttle & McCarthy, of New York, N. Y., for plaintiffs in error.

Fist, Dewberry & Braggs, of Tulsa, and George E. Reynolds and Orville C. Sanborn, both of New York, N. Y., for defendants in error.

RILEY, J. This is an appeal by W. R. Davis and S. R. Thornburg from a judgment of the district court of Tulsa county vacating and setting aside an order or decree theretofore entered in an action in said court approving and confirming the sale to Thornburg of a judgment entered in said court in 1929, growing out of an action by Wilfred H. Cunningham as trustee for stockholders of a Delaware corporation known as Davis Malcona Company against Davis, and also canceling and expunging of record a purported release of said judgment.

The effect of the judgment from which this appeal is prosecuted is to restore in full force and effect the original judgment against Davis.

The litigation out of which this appeal grows was commenced in the district court of Tulsa county in February, 1928.

Davis was the president of the Davis-Malcona Company. In addition to outstanding common stock some 1,520 shares of preferred stock of the par value of $100 had been sold to persons chiefly residents of Pittsburgh and Philadelphia, Pa.

Alleging irregularities and misappropriation of company funds by Davis and L. D. Hibbs, the Pennsylvania stockholders, by Wilfred H. Cunningham, instituted an action against the company, Davis and Hibbs. A receiver for the company was appointed. The affairs of the company were administered to a conclusion by the receiver, and all the assets of the company were disposed of except the claim against Davis and Hibbs. The suit against them was pending until January 2, 1929. At that time the action was dismissed as to Hibbs. Davis was adjudged in default and a judgment was entered against him in favor of Cunningham as trustee, in the sum of $169,123.47. The receiver was discharged on that date.

The judgment was kept alive by execution until after 1936. A. B. Honnold, of Tulsa, one of the attorneys representing the plaintiffs in said action, kept the judgment alive by causing execution to issue. He followed the business affairs of Davis, and apparently kept fairly well informed as to the whereabouts of Davis and his activities, but had been unable to collect anything on the judgment.

Sometime in the first part of 1936, N. E. Bowden was active in the promotion of a company through which he

hoped to engage extensively in the sale of "trading stamps." In his efforts to raise money to finance this company Bowden approached Davis in New York and solicited the aid of Davis. Bowden knew of the judgment against Davis and mentioned same to Davis. Davis strenuously denied the validity of the judgment. The result of this discussion was that George B. Schwabe, an attorney of Tulsa, was employed by Bowden to investigate the validity of the judgment and advise whether the judgment could be set aside.

Schwabe advised Bowden, and through him, Davis, that the judgment was valid and could not be set aside.

Thereupon a plan was apparently decided upon whereby it was thought the judgment might be sold to Bowden under an order of the court, and Bowden would release the judgment, and Davis would in turn finance Bowden's "Trading Stamp" Company. The plan called for purchase by Bowden of some of the preferred stock of the then defunct Davis-Malcona Company, and intervention in the original action and application to the court for appointment of a receiver to sell the judgment at public auction. Bowden interested George R. Valerius of Tulsa in the scheme and Bowden and Valerius bought 290 shares of the preferred stock.

Davis, or some company in which he was interested, furnished Bowden with money to purchase the stock and for incidental expenses. Thereafter Bowden and Valerius, with Schwabe as attorney, applied for and obtained leave to intervene in said action. They filed a plea of intervention and asked for and obtained the appointment of a receiver to collect, compromise, or sell the judgment. The receiver was appointed without notice to Cunningham or Honnold. When Honnold learned of the appointment of the receivers, he protested in person to the court because he had not been notified. He presented an affidavit in which he recited, at length, the proceedings had up to that time and his efforts to collect, and alleged that Bow-

den had theretofore offered $25,000 for the judgment, and that claimants demanded $50,000, and detailed at some length conversations had with Bowden in which Bowden plainly indicated that he, Bowden, was acting in conjunction with Davis at the instance of Davis. He set out a copy of a letter received by him from R. Sturgis Ingersoll, a Philadelphia attorney who represented plaintiffs. This letter was dated September 10, 1936, and among other things stated: ·

"Dear Mr. Honnold:

"Mr. Bowden called at the office on September 8th with Mr. Cunningham. The story seems to be that Bowden desired money to finance a claim against the Federal Government on behalf of the Creek Indians, from which he expects success and a large fee, Bowden says that Davis and his associates are prepared to give him the necessary financial assistance if he delivers to Davis the judgment. It all sounded rather extravagant."

The affidavit, among other matters, stated:

"It would appear from the foregoing that if N. E. Bowden and George P. Valerius now hold by assignment any of the old certificates of stock of the Davis Malcona Company they have recently acquired same for the purpose of acquiring control of said judgment in order that they, who are strangers to the judgment and to the litigation in which the judgment was obtained, may deal or settle with said W. R. Davis to their personal profit in violation of equity and good conscience."

The affidavit also suggests lack of jurisdiction of the court to entertain the plea in intervention and appoint a receiver at that time.

Thereupon the district judge ordered the affidavit filed in the case, and ordered a hearing had on the question of whether or not the order appointing a receiver should be vacated.

Evidence was heard. The result was an order dismissing the plea of intervention for want of jurisdiction and dis-

charging the receiver. The intervention proceedings, therefore, passed out of the case, except that the affidavit of Honnold and all the evidence taken in connection therewith were introduced as a part of the evidence in this case. This evidence will be hereinafter discussed.

Thereafter Bowden and Valerius filed an independent action in the district court seeking the same relief. In that action Cunningham and the holders of all the stock in the Davis Malcona Company and their successors in interest, if any, other than that bought by Bowden and Valerius, including W. R. Davis, were made parties defendant.

The plaintiffs sought the appointment of a receiver or trustee of the judgment, with instructions to "investigate the value of said judgment; its collectibility and other facts pertinent to same * * * and that the same be collected, compromised, sold or otherwise liquidated," and that the proceeds be held for the benefit of those interested in said judgment, and upon investigation and adjudication as to ownership, the proceeds be paid to the respective owners as their interests should appear.

The petition was filed May 5, 1937. Hearing of the application for appointment of receiver was by order of the court set for May 12, 1937, and it was specifically ordered that notice of such hearing be given by serving a copy thereof on A. B. Honnold, attorney of record for Wilfred H. Cunningham. Service of summons was by publication July 5, 1937. Proof of service was filed and approved by the court. An order appointing Tom H. Durham receiver was entered May 12, 1937.

On June 17, 1937, N. E. Bowden and Wilfred H. Cunningham, purporting to act by his agent and attorney, A. B. Honnold, entered into a written agreement whereby Bowden agreed to submit in writing to the receiver an offer to purchase an assignment of the judgment against Davis and pay therefor the sum of $9,120, to be paid out to the various owners of said judgment, except the sum of $1,740, representing the pro rata shares of Bowden and Valerius, was to be paid to Honnold, out of which Honnold was to pay the compensation and expenses of Cunningham as trustee in the original action, the fees, expenses, etc., of Tom L. Durham as receiver, and costs, etc., all according to separate escrow agreement, whereby Bowden had deposited the sum of $15,120 in the First National Bank & Trust Company of Tulsa, $10,120 to be paid to Tom L. Durham, receiver, and $5,000 to be paid to A. B. Honnold, upon presentation of a certified copy of the order of court confirming the sale of the judgment against Davis to Bowden. The $5,000 to be paid to Honnold was for attorney's fee of Honnold and his associates in connection with the procurement of said judgment and other legal services in connection therewith. The contract called for the assignment of said judgment to N. E. Bowden, or his nominee. In return the contract provided that Cunningham, through his agents and attorney, A. B. Honnold, agreed to cooperate and use all lawful means in the then pending litigation, viz., the action theretofore commenced by Bowden and Valerius, to assist Bowden, or his nominee, to obtain good and valid title to the original judgment against Davis.

Thereafter, July 17, 1937, Cunningham, purporting to act by A. B. Honnold, his attorney, filed an answer and cross-petition in the action brought by Bowden and Valerius, wherein he recited many of the proceedings leading up to and culminating in the original judgment against Davis, and admitted certain of the allegations in plaintiff's petition, including the correctness of a list of stockholders in the Davis Malcona Company attached to plaintiff's petition, and then specifically alleged:

"This answering defendant and cross-petitioner further alleges that he is the judgment creditor named in said judgment obtained by him for the benefit of the said Davis Malcona Company and the stockholders thereof; that he has made diligent effort since the rendition

of said judgment to collect same but without success, and he now has no immediate prospect of collecting said judgment or any part thereof or realizing anything thereon for the benefit of the parties in interest except through these proceedings."

The prayer was:

"* * * That this court determine who are the holders of the preferred stock of the said Davis Malcona Company and determine that they are the co-owners of said judgment subject to the claims of this cross-petitioner and enter judgment herein directing the sale of said judgment by the receiver, and distribution of the proceeds."

On the same day the answer and cross-petition was filed, the matter appears to have been presented to the court either for consideration on the merits or for an order setting the matter for final hearing. On that day the court apparently heard some evidence in support of said application. An order was entered that day as follows:

"Order to Show Cause.

"Now, on this 17th day of July, 1937, the above cause came on for hearing upon the application of plaintiffs and Wilfred H. Cunningham, trustee for the former stockholders of Davis Malcona Company, and their successors in interest, and after hearing the evidence offered in support of said application, and for good cause shown:

"It is by the court ordered, adjudged and decreed by the court that said application be heard in this court on the 7th day of September, 1937, at 9:00 o'clock a. m., or as soon thereafter as the same can be considered by the court; and that a copy of this order be mailed by the receiver to each and all of the defendants, requiring them to show cause, if any they have, why the offer of N. E. Bowden to purchase the judgment rendered in cause No. 25845 in the district court of Tulsa county, Oklahoma, January 2, 1929, against W. R. Davis and in favor of Wilfred H. Cunningham, for the benefit of Davis Malcona Company, a corporation, and its stockholders, should not be accepted and an order made and entered herein directing the receiver in this cause to sell and assign said judgment, as the sole remaining asset of Davis Malcona Company, a defunct corporation, to N. E.

Bowden or his nominee, for $9,120, for the benefit of the stockholders of Davis Malcona Company, and their successors in interest, in proportion to their rights and interests in and to said judgment and the proceeds to be obtained from the sale and liquidation thereof; and to show cause, if any they have, why such sale should not be approved and confirmed and said assignment and transfer of said judgment made to such purchaser.

"It is further ordered, adjudged and decreed by the court that Tom D. Durham, the receiver in this cause, be and he hereby is directed to notify each and all of the defendants by mail, to present their claims, if any they have, in the said judgment, and/or the proceeds to be derived from its collection, compromise, sale or liquidation, and that said claims must be filed with said receiver on or before the 7th day of September, 1937, or the same will be forever barred."

An order was entered continuing the final hearing to September 13, 1937. On or before the latter date six and possibly seven of the alleged owners of the preferred stock in the Davis Malcona Company executed and caused to be filed their appearance in the case and consent that the prayer of plaintiffs be granted. All of those entering such appearance are defendants in error herein. September 13, 1937, the cause came on regularly for trial upon the merits.

In the meantime Bowden had, in writing, named and designated his nominee, to whom the judgment should be assigned, in the person of S. R. Thornburg. His address was given as Room 2555, at 120 Broadway, New York City, N. Y.

Judgment was entered as prayed for directing the acceptance of the offer of Bowden and ordering the sale and assignment of said judgment to Thornburg and directing the receiver to execute proper assignment.

The purchase price was paid to the receiver and all but about $2,100 was disbursed by him and paid out as agreed upon, payment being made to all who had filed and proved their claims, at the rate of $6 per share of the preferred stock in the Davis Malcona Company.

The assignment to Thornburg was executed, and later he executed a written instrument purporting to release and satisfy the judgment in full.

Thereafter, on October 22, 1937, the present action was commenced by the Pennsylvania Company for the Insurance of Lives and Granting Annuities, as executor of the will of J. Walter Tebley, and trustee for Madge Kirtz, and some 14 other plaintiffs as owners or representatives of owners of stock in said Davis Malcona Company, against Davis, Thornburg and others, to cancel or set aside the order of May 12, 1937, appointing Tom D. Durham, receiver, and all subsequent judgments, etc., in the cause of Bowden et al. v. Cunningham and to cancel and expunge from the records the release of the judgment of January 2, 1929, against Davis.

The petition and exhibits cover some 50 pages of the record and is too long to set out in full. In substance it sets out or recites more or less in detail most of the proceedings had from the instigation of the original action against Davis Malcona Company, Davis and Hibbs, down to and including the sale of the judgment against Davis, the assignment thereof to Thornburg, and the subsequent release of the judgment by Thornburg.

The petition then in substance alleges that Bowden and Valerius filed the original petition for the appointment of receiver and for the sale of said judgment, representing themselves to the court to be the owners of stock in the Davis Malcona Company, and represented themselves and all of the other owners of stock in said company, or their successors in interest, and that all subsequent proceedings had thereunder and the orders and judgments entered in said proceedings were had and done at the instance of Bowden and Valerius so pretending to act in the interest of the co-owners of the judgment against Davis, apparently in good faith and equity, but in fact such representations so made by Bowden and Valerius were deceitful, false and fraudulent, and were made for the purpose and with the intent of deceiving the court and defrauding the rightful co-owners of said judgment against Davis, and that in truth and in fact Bowden and Valerius were acting in concert and in conspiracy with the judgment debtor, W. R. Davis, and his associates; that the entire proceedings had and all the things done in connection therewith were had and done pursuant to the scheme and plan of the judgment debtor, W. R. Davis, to obtain and cause to be entered of record a release of the judgment against him; that Bowden was employed by Davis and in all of said proceedings was acting as the agent of Davis for the purpose of deceitfully and fraudulently obtaining a pretended sale of said judgment for an insignificant sum; that in truth and in fact the bid of Bowden to the receiver was the bid of W. R. Davis, the judgment debtor, and that all the money paid for said judgment and for attorney's fees, receiver's fees, costs and incidental expenses, was furnished and advanced by Davis; that at the time said proceedings were had and at the time this petition was filed, said judgment debtor, W. R. Davis, was a man of large financial means, and well able to pay said judgment in full. That until after the final order and judgment made by the court for the sale and confirmation thereof of said judgment against W. R. Davis, petitioners had no knowledge of the scheme and plan of the said W. R. Davis to secure a release of said judgment; that at the time of receipt and at all times thereafter until subsequent to the final judgment and order authorizing said sale and confirming same, petitioners, having no knowledge of the true facts, assumed said proceedings to be regular, and that said action had been instituted by actual owners of interest in said judgment, acting as they pretended for the benefit of these petitioners and other co-owners of said judgment; and relying upon such assumption and believing the proceedings to be in good faith, filed their claims with the receiver.

Bowden and Valerius filed their separate answers in form of general denials.

Davis filed his answer, consisting first of a general denial, except as to formal allegations of plaintiffs' petition, and affirmatively alleged that Cunningham was at all times hostile to him (Davis) and Bowden and Valerius and dealt with Bowden and Valerius at arm's length and that Cunningham filed his answer and cross-petition in the proceedings leading to the sale of the judgment against Davis only after the contract had been entered into between Bowden and Cunningham on terms satisfactory to Cunningham and his attorney of record, and specifically alleged that in all the negotiations and transactions leading up to and resulting in the sale of the Davis judgment, the Davis Malcona Company and the stockholders thereof were not represented and were not pretended to be represented by Bowden and Valerius or either of them, but were in fact represented by Cunningham and his attorney, A. B. Honnold, and by way of amendment he alleged in substance that the Davis judgment was in fact invalid and of no force and effect when entered in that the cause in which it was entered had been dismissed on the 27th day of June, 1924, and the dismissal thereof was entered of record on the journal of the court, and that there was no action pending at the time the judgment was entered. Attached to the amendment and made a part thereof was the following exhibit:

"District Court

"June 27th, 1924
Regular June 1924 Term

"Now, on this 27th day of June, 1924, the District Court of Tulsa County, Oklahoma, reconvened pursuant to adjournment.

"Present and Presiding: Honorable Edwin R. McNeill, Judge; Hal Turner, Court Clerk; John M. Goldesberry, County Attorney; R. D. Sanford, Sheriff; C. J. Harry, Court Reporter; and Wm. Talbott, Bailiff.

"Public proclamation of the opening of court having been announced, the following, among other proceedings were had, to wit:

&ast; &ast; &ast;

"Cunningham v. Davis      No. 25,843. "Dismissed."

Reply to this amendment was a general and specific denial, verified by the affidavit of Joe T. Dewberry, one of counsel for defendants in error.

Trial was had upon the issues thus joined, resulting in findings of fact and conclusions of law favorable to petitioners, and a judgment and decree setting aside the order of sale, confirmation thereof, the assignment of the judgment and its release of record and reinstating as valid and subsisting the judgment against said W. R. Davis.

Plaintiffs in error present 24 assignments of error. The first eight assignments are directed to as many separate findings of fact by the court. The next nine assignments go to alleged error in conclusions of law by the court. The remaining seven assignments go to the judgment of the court in vacating the order confirming the sale; canceling the assignment of the judgment, and canceling the release of the judgment.

It is then asserted that the judgment is contrary to law, contrary to the evidence, and is not supported by the evidence, and finally that the court erred in overruling the motion for a new trial.

We deem it proper to first dispose of the question raised as to the validity of the original judgment against Davis, based upon the alleged dismissal of the action long before the judgment was entered.

In this connection the trial court made a finding to the effect that the word "dismissed" appearing on the docket in the original action did not constitute a dismissal of the case on its merits, but related only to a motion in the case pending on the date the entry was made on the docket, and was in fact a dismissal of said motion only.

Plaintiffs in error do not assign as error this finding. The fourth conclusion of law is that said cause was not dismissed upon the merits of June 27, 1924.

A careful examination of the record will disclose that the finding and conclusion of law made by the court as to this question is fully sustained by the evidence.

On the other questions the testimony and exhibits cover more than 1050 typewritten pages in the record. It is, therefore, not practical to set forth the evidence or even the substance thereof in full. The record does disclose, however, that the idea of a sale or liquidation of the judgment against Davis originated with Bowden. He evidently learned of the judgment, and had some information to the effect that Davis might be able to assist him in a material way in financing his (Bowden's) sales stamp enterprise. It appears that he conceived the idea that if he could obtain the judgment or control thereof, he could use it to move Davis to his assistance. He first talked to Honnold about it and apparently led him to believe that he could and would pay something like $50,000 for the judgment. He was unable to raise that sum or anything like it. Thereafter he went to New York and contacted Davis, and from that time on Bowden and Davis were acting together. They, through Bowden, had Mr. Schwabe investigate the record and advise as to whether the judgment was valid. Upon learning that the judgment could not be set aside, they proceeded under the apparent advice of Schwabe to buy up some 290 shares of the preferred stock of the Davis Malcona Company. The stockholders were the real owners of the judgment. Davis, or some corporation in which he was interested, furnished the money with which to purchase said stock and to pay all the expenses incident to, or connected with the whole transaction, including Schwabe's attorney's fees. Davis apparently knew all about the activities of Bowden and Valerius. Valerius appears to have been only a handy man who gave his name to the proceedings. Davis apparently did not trust Bowden entirely, and by himself, or through his legal advisers, insisted that when and if the sale of the judgment was consummated, the sale and assignment must be made to Bowden or his nominee, and insisted on selecting the nominee in the person of Thornburg.

As we view the record, but two questions are presented. They may be summarized: (1) Did the filing of the action for appointment of a receiver and for sale of the judgment against Davis in the manner it was filed and under the circumstances constitute a fraud upon the court which of itself should call for a cancellation of the judgment and sale thus obtained? (2) If the action as brought was not a fraud upon the court, was there fraud or misrepresentation upon or to defendants in error such as to render the sale and assignment voidable?

Defendants in error earnestly contend that the concealment of the connection of the judgment debtor, Davis, with Bowden and Valerius constituted imposition and fraud upon the court, and that the fraud was directed against the court.

It is now recognized that a debtor may employ an agent to purchase an outstanding claim or indebtedness against him on the best terms obtainable, and that the agent so employed in negotiating with the creditor need not disclose to the creditor that he is acting as agent for the debtor. Sigler v. Sigler (Kan.) 158 P. 864.

Pewabic Mining Co. v. Mason, 145 U. S. 349, 36 L. Ed. 732, is a case similar in many respects to the instant case. There a controversy arose between the majority and minority stockholders of a mining corporation, the charter of which had expired, as to what disposition should be made of the property of the company. The minority stockholders, by action in court, forced a sale of the property at public sale. At the sale the minority stockholders purchased the property and shortly thereafter transferred the same to the Quincy Mining Company, in which the minority stockholders were interested. After the sale was confirmed, the majority stockholders sought to have the sale set aside upon the ground that the minority stockholders who had forced the sale were acting in the interest of the

Quincy Mining Company and not for the benefit of the stockholders of the Pewabic Company.

The court said: "But there was no wrong or fraud in this and no deception." There was no deception because "Each party evidently knew the interest and relations of the other." This because in the answer filed in the original action it was charged upon plaintiffs (the minority stockholders) that they were acting in the interest of a rival mining company.

Furthermore, the court was not and could not have been deceived.

In the matter of the attempted intervention, Mr. Honnold presented to the court an affidavit which the court of its own motion ordered filed, in which it was in substance charged that Bowden was acting for or in behalf of Davis. In support of this charge he quoted from a letter received by him from his associate counsel in which it was stated that "Bowden says that Davis and his associates are prepared to give him the necessary financial assistance if he delivers to Davis the judgment." As a result of this affidavit the court ordered a hearing as to whether the order appointing a receiver in that proceeding should be set aside. At this hearing evidence was taken and Honnold testified in substance that after he had negotiated with Bowden for the assignment of the judgment for something like $50,000, and he had later learned that Schwabe had called for the files in the original action, he (Honnold) came to the conclusion that Schwabe was representing Davis.

He also testified that he presumed Mr. Schwabe did not advise the court about Mr. Bowden in the case and that he was dealing with the judgment debtor, Davis, and trying to get control of the judgment, and he did not think any man could draw any other reasonable conclusion.

Defendants in error introduced in evidence in this case the affidavit of Honnold and all the testimony taken at said hearing before Judge Williams.

It thus appears that Ingersoll knew that Bowden was dealing with or represented Davis; that he so informed Honnold; that Honnold knew it and had so informed Judge Williams both in the affidavit and his oral testimony.

With all this before him, together with other facts and circumstances, it cannot be said with reason that Judge Williams did not know when the Bowden-Valerius action was commenced and consummated; that Bowden and Valerius were acting at the instance of Davis.

This appears clearly and convincingly from the fact that the court required the receiver to notify all the stockholders to show cause why the judgment should not be ordered sold. There was no fraud or deception practiced upon the court such as to justify the order setting aside the sale, and its confirmation and subsequent assignment of the judgment.

Defendants in error also assert that the institution of the alleged representative action, including allegation in the petition that the Bowden and Valerius suit was a representative action, constituted fraud upon the court.

In support of this assertion they cite Stevens v. Union Trust Co., 57 Hun, 509, 11 N. Y. S. 274; Hackley v. Draper, 60 N. Y. 88, and other cases of a similar nature.

The facts in the instant case are entirely different. In the cases cited the parties carrying on the proceedings assumed to act for all persons similarly situated. Such other persons were not made parties to the action and apparently had no notice of the proceedings. In the instant case all stockholders or parties interested in the judgment were made parties defendant, and were served with summons by publication. All copies of the petition and summons were mailed to all of them. A number of them filed their appearance in the cause. They were given full opportunity to inquire into the proposed action and its effect. In addition they were all specifically notified to show cause why the sale should

not be consummated. They were at full liberty to consult with Cunningham, their former trustee, Mr. Ingersoll and Mr. Honnold, their attorneys in the original suit, and obtain all information which such parties had.

In such circumstances it cannot be said that the action as brought and conducted was fraudulent as applied to the court.

The remaining essential question is whether there is evidence of fraudulent false representations to defendants in error or any of them.

There is no such evidence. Not one of them testified that Davis, Bowden, Valerius, Schwabe, or any other person made any false representation to them, or that they were in any way deceived.

Defendants in error are in this situation: If Ingersoll, Honnold, and Cunningham were still the agents and representatives of defendants in error, they had full knowledge that Bowden, Valerius, and Davis were acting together. If Ingersoll, Honnold, and Cunningham were not then the agents and representatives of defendants in error, then any false representations or statements made to them by plaintiffs in error or anyone acting for them could not be relied upon by defendants in error as fraud practiced upon such defendants in error.

It follows that the judgment and order of the court vacating the sale of the judgment and confirmation thereof, canceling and setting aside the assignment of the judgment and the release thereof, is contrary to and not supported by the evidence.

Said judgment, order and decree is reversed.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, CORN, GIBSON, and DAVISON, JJ., concur. HURST and DANNER, JJ., dissent.

On Rehearing.

HURST, J. (dissenting). I am of the opinion that the record does not justify a reversal, and that the conduct of Davis was such that he is not entitled to prevail. Briefly, the record is as follows: In 1923 Davis was instrumental in organizing the Davis-Malcona Company and became its president and, with one Hibbs, its manager. Soon thereafter he fraudulently converted to his own use some $130,000 of the funds of the company. This embezzlement by Davis was followed by the insolvency and receivership of the company. On January 2, 1929, judgment was rendered against him for $169,123.47 by reason of such misappropriation, in an action instituted in February, 1924, by the preferred stockholders of said company. In 1936, Davis, being anxious to get rid of the judgment, employed Bowden as his agent to purchase some of the preferred stock of the company so that as a stockholder he could institute proceedings to procure the sale of the judgment so he could purchase it in the name of his agent and get satisfaction of the judgment. Bowden interested Valerius in the transaction. The agents so employed, with money furnished by Davis, purchased stock in the company, and in their own names sought to intervene in the original action. In February, 1937, objections by the plaintiffs' attorneys to such intervention were set for hearing. It was then charged that Bowden and Valerius were in fact representing Davis, but at that hearing both Bowden and Valerius falsely testified that Davis was not being represented by them. Bowden, in the subsequent hearing before Judge Staley, admitted that Davis furnished the money to buy the stock. Davis also admitted that he so furnished the money. The plea of intervention was denied, and then Bowden and Valerius filed an independent action, seeking the appointment of a receiver to sell the judgment, and it culminated in the sale of the judgment against Davis to Davis, through his agent Bowden. The judgment with interest then amounted to more than $240,000 and was sold for $9,120. Both the intervention proceedings and the receivership proceedings were heard before Judge Williams, who was deceived by said false testimony and by the false

446

allegations of the petition to the effect that Bowden and Valerius were acting for themselves and on behalf of all other stockholders, when in fact the proceedings were instituted for Davis and against the interest of the other stockholders. After the hearing at which the false testimony of Bowden and Valerius was given, Judge Williams, who in the meantime had resigned and been succeeded by Judge Staley, testified that the proceedings "went forward without my knowledge that Mr. Davis was concerned."

Judge Staley, from whose judgment vacating the sale and satisfaction of the judgment the present appeal was taken, found as follows:

"The court further finds that the defendant, Davis, and the said N. E. Bowden, and the other defendants herein associated with the said Davis and Bowden, including the said S. R. Thornburg, were guilty of fraud upon the district court of Tulsa county, Okla., and the receiver of the Davis-Malcona Company in the transaction wherein the said judgment was sold to the said S. R. Thornburg and that the said fraud consisted of withholding from the stockholders of Davis-Malcona Company, the district court of Tulsa county, Okla., and the receiver of the Davis-Malcona Company, the information that Bowden was acting for and on behalf of W. R. Davis and further consisted of the said Bowden's affirmative acts and declarations to the effect that he was acting for himself and not for the said Davis, when in truth and in fact he was the paid agent of the said Davis to secure the satisfaction of said judgment or to acquire the ownership of said judgment."

The testimony of Judge Williams, set out above, shows that the court was imposed upon by said perjury and false allegation, and this is sufficient, under the decisions of this court, to justify vacating the sale. Jones v. Snyder, 121 Okla. 254, 249 P. 313; Federal Tax Co. v. Board of County Commissioners, 187 Okla. 223, 102 P. 2d 148; 15 R.C.L. 705, 761; 34 C.J. 282.

In the present case the deception practiced was cleverly screened by following an apparently adversary legal procedure, such as making the stockholders parties defendant, giving notice of the order to show cause, and the appointment of a receiver to sell the stock, which gave an additional appearance of fairness and good faith to the proceeding. But the court should look to the substance, not to the form. I cannot escape the conclusion that the proceeding resulting in the sale of this judgment was from its inception designed to, and did, perpetrate a fraud upon the court in which it was brought, and upon the stockholders who owned the judgment. From the purchase of stock by the agents of Davis, in order that they might, as apparently bona fide stockholders, request that the judgment be sold, down to the consummation of their fraudulent purpose, every move made in the proceeding, and all the evidence produced by them, was made and done to conceal their real purpose, and to impose upon the court and the stockholders. No such deception or fraud as that contained in the record in the instant case was present in the cases relied upon in the majority opinion, on which the first syllabus is predicated.

The trial of this case consumed several days, and the trial court, having seen the witnesses and heard them testify, was in a better position to ascertain the truth than we are from the record. It judicially determined that such evidence sustained the charges of fraud. The proceeding to vacate the sale being addressed to the sound discretion of the trial court, the judgment should not be disturbed unless a clear abuse of discretion is shown. Fellows v. Owens (1936) 178 Okla. 224, 62 P. 2d 1215. In my opinion the record in the present case does not show an abuse of discretion. I think the trial court correctly vacated the sale for fraud, and this court should not disturb its judgment.

This cause had its beginning in 1924 in breach of trust and embezzlement and its ending in 1937 in deception, concealment, and perjury. It is my view that courts of justice have no higher duty than to see to it that parties guilty of

such conduct do not profit thereby. I regret to see this court render a decision that permits Davis to profit by his fraudulent scheme.

I therefore dissent to the majority opinion.