[Crim. No. 2032.  In Bank.—March 23, 1917.]

## In re ANDREW MADALINA, on Habeas Corpus.

CRIMINAL LAW—PARENT AND CHILD—STATE CANNOT QUESTION LEGITI-
MACY OF CHILD BORN IN WEDLOCK.—In a criminal prosecution under
section 270 of the Penal Code of an alleged father for failure to
provide for his alleged illegitimate child, the state of California may
not question the legitimacy of such child, when it was born in lawful
wedlock to a woman whose husband was alive when it was born to
her, and between whom there had been no divorce.

ID.—WHO MAY DISPUTE PRESUMPTION OF LEGITIMACY.—Under section
195 of the Civil Code, the presumption of the legitimacy of a child
born in wedlock can be disputed only by the husband or wife, or
the descendant of one or both of them.

APPLICATION for a Writ of Habeas Corpus directed to
the sheriff of Sonoma County.

The facts are stated in the opinion of the court.

E. J. Dole, for Petitioner.

Clarence F. Lea, District Attorney, and C. W. Hoyle,
Assistant District Attorney, for Respondent.

LORIGAN, J.—Petitioner seeks his release in this *habeas
corpus* proceeding from the custody of the sheriff of Sonoma
County, who holds him under a commitment by a magistrate
to answer before the superior court of that county for failure
to provide for his alleged illegitimate child.  The facts pre-
sented on the hearing before the magistrate and upon which
the commitment was based, but which are claimed to be legally
insufficient to warrant his detention, are stipulated by the
attorney for petitioner and the district attorney of Sonoma
County.

The petitioner was prosecuted under section 270 of the
Penal Code as amended in 1915 [Stats. 1915, p. 572], which
reads as follows: "A parent of either a legitimate or illegiti-
mate minor child who willfully omits, without lawful excuse,
to furnish necessary food, clothing, shelter, or medical attend-
ance for his child, is punishable by imprisonment in the state

prison, or in the county jail, not exceeding two years, or by fine not exceeding one thousand dollars, or by both.''

The facts as stipulated are that the minor child referred to in the complaint is about eight months old; that it was born in lawful wedlock to a woman whose husband was alive when said child was born to her, and between whom there had been no judgment of divorce. At the preliminary examination, so it is stipulated, the mother testified to the nonaccess of her husband, or of any person other than said petitioner, for a period of two years next prior to the birth of the child. It was further stipulated that no action had ever been begun by the said mother or by any other person, under section 196a of the Civil Code, to determine the parentage of said child, or to obtain a judgment against the petitioner or any other person for the support of said child and that there is no such judgment.

In disposing of this petition several sections of the codes are to be taken into consideration.

Section 196a of the Civil Code, a moment ago referred to, provides: ''The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child, by his mother or guardian, and in such action the court shall have power to order and enforce performance thereof, the same as under sections 138, 139, and 140 of the Civil Code, in a suit for divorce by a wife.''

By section 193 of the Civil Code it is provided that ''all children born in wedlock are presumed to be legitimate.''

Section 195 of the same code declares: ''Who may dispute the legitimacy of a child. The presumption of legitimacy can be disputed only by the husband or wife, or the descendant of one or both of them. Illegitimacy, in such case, may be proved like any other fact.''

The sections quoted are all the sections of the code, criminal or civil, which bear directly upon the principal and, in our opinion, the sole question involved here, namely, whether the state of California in a criminal prosecution of this character brought in its name is authorized to question the legitimacy of a child born in wedlock.

The first legislation in this state of the nature involved here was enacted in 1913 when section 196a, heretofore quoted,

was passed providing for a *civil* suit. at the instance of the
mother of an illegitimate child, or its guardian, against its
father for its support and education.    In 1914, one Gambetta,
was prosecuted under section 270 of the Penal Code as it then
stood, it being claimed that the said section 270, aided by sec-
tion 196a, provided for the *criminal* prosecution of the father
of an illegitimate child for its nonsupport.    This court on
*habeas corpus* (*In re Gambetta,* 169 Cal. 100, [145 Pac. 1005])
held that section 270 of the Penal Code as it then stood had
no application to the father of an illegitimate child and that
section 196a of the Civil Code, adopted in 1913, imposing an
obligation on a father to support his illegitimate child had
not changed the application of said section 270 of the Penal
Code in any way.    Subsequent to this decision, and in 1915,
the legislature amended section 270 of the Penal Code to pro-
vide as it does now, that the parent of either a legitimate or
illegitimate minor child shall be liable to criminal prosecu-
tion, as each still remains, under section 196a of the Civil
Code, liable to a civil action for its nonsupport.    While it
thus appears that under the amendment to section 270 of the
Penal Code the father of an illegitimate child may be prose-
cuted criminally for its nonsupport, it is contended by coun-
sel for petitioner that a criminal proceeding will lie, under
said section, against the father only in a case where the child
is the illegitimate offspring of his intercourse with an un-
married woman and that it will not lie, and was not intended
to lie, against him in the case of a child which had been born
in wedlock.    The last portion of the contention of petitioner
is the only point in the case which we deem it necessary to
consider.    As amplified by him in his argument his position
respecting it is this: That it being conceded that this child, of
which the petitioner is alleged to be the father, was born in
wedlock, the presumption is that it is legitimate; that the de-
clared policy of this state as expressed in its legislation is
that the presumption of such legitimacy can be disputed only
by the husband or wife or the descendants of one of them;
that no one else may .do so; that the state having thus by ex-
press legislation inhibited any question as to the legitimacy
of a child born in wedlock being raised except as above indi-
cated, cannot itself raise it in a criminal prosecution or other
proceeding.    It is, of course, to be understood, that when it
is said that the state cannot itself raise the question of the

legitimacy of a child born in wedlock, it is not meant that it has no power to enact legislation authorizing such inquiry in a proceeding in its name, but only that it has not so far done so; that on the contrary it has denied itself this right by expressly declaring who of others alone may do so.

We are satisfied that the position of counsel for petitioner is correct, and that any claim to the contrary is answered by a consideration simply of section 195 of the Civil Code, which declares that the presumption of the legitimacy of a child born in wedlock can only be raised by the husband or wife or the descendants of one of them. This is the declared policy of this state, and is simply the adoption of a rule prevailing generally in all civilized communities. If the state has decided to depart from that policy it certainly has not declared that intent by any express language found in, or any reasonable inference to be deduced from, the terms of section 270 itself, or considered in connection with section 196a. Counsel for respondent strenuously contends that section 195 of the Civil Code is inapplicable, because the criminal proceeding under section 270 is found in the Penal Code which as to all criminal procedure governs. But this contention is not sound. A mere place in the codes is not decisive of the effect or the application of code provisions. The Civil Code by section 195 was laying down a rule of public policy in a matter which the state deemed vital to society; it was following the civilized rule and made it applicable under all circumstances where the question of legitimacy of children born in wedlock was sought to be raised, prescribing a limitation as to the persons who might raise the question by expressly enumerating those who might do so; it eliminated itself from doing it under an application of the familiar rule that an enumeration of persons to be affected by a code provision is an implied exclusion of all others. By the Civil Code section the inquiry was expressly limited on behalf of certain persons. When it came to providing for proceedings under section 270 the legislature did not in any language found therein, or anywhere else, abrogate what it had laid down in section 195 as to questioning the legitimacy of a child born in wedlock. This section 195 is to be considered with section 270 as in *pari materia* with the latter and must be construed as a part of it. (Pol. Code, sec. 4480 et seq.)

But it is said by counsel for respondent that authority to raise the question of legitimacy where the child is born in wedlock must be implied from the enactment of section 270 authorizing the criminal proceeding; that such a proceeding can only be brought in the name of the state.   True, the criminal proceeding must be in the name of the state—the people— and is authorized to punish the parent of an illegitimate or legitimate child for an omission without excuse to support it. Parents of legitimate children may be prosecuted at the suit of the state; parents of illegitimates born out of wedlock may also be prosecuted.   So that the code provision is not without cases for its application where the question of the legitimacy of the child will not arise, or where it will be a proper subject of inquiry at the suit of the state.   But when it is attempted to bring within its terms in a criminal prosecution a question of the legitimacy of children born in wedlock there is nothing directly or inferentially in the language of section 270 which authorizes the state to raise that question.   To the contrary, the expressly declared policy of the state as found in section 195 precludes it from doing so, and in the interests of public policy, decency, morality, and the protection of innocent children this commends itself.   Public policy and common decency are opposed to the bastardizing of children born in wedlock against the wishes and perhaps against the protest of their putative parents.   If neither the husband nor the wife to an existing marriage desires to raise any question of the legitimacy of a child born during its existence, the best interests and welfare of society will be promoted if the state likewise declines to intervene in raising that question.   It will appear, too, that the welfare, comfort, and happiness of innocent children are, under this policy of the state, best conserved, as they are protected against the stigma of illegitimacy, or aspersions cast upon their birth being raised by third persons, either through excessive zeal or actuated by sinister motives in criminal proceedings brought in the name of the state.

The writ is granted and the petitioner ordered discharged from custody.

Melvin, J., Shaw, J., Henshaw, J., Sloss, J., Lawlor, J., and Angellotti, C. J., concurred.