This action originated in the county court of Nowata county by S.A. Miller filing a petition to probate the last will and testament of Rosie Peacock, who died in Nowata county December 19, 1916. To the petition was attached a copy of a will which named Catherine Miller as sole beneficiary and S.A. Miller as sole executor. James Peacock filed a petition contesting the probate of said will, alleging he was the father of Rosie Peacock, and the will was void for the reason the testatrix was a full-blood member of the Five Civilized Tribes, and the will was not executed as provided in section 23 of the act of Congress approved April 26, 1906, and amended by section 8 of the act of May 27, 1908. S.A. Miller filed an amended answer to the contest petition of James Peacock, wherein it was admitted that Rosie Peacock was enrolled as a full-blood Cherokee Indian, but alleged that James Peacock was not the father of said Rosie Peacock. The county court admitted the will to probate, and from said order appeal was taken to the district court, where the case was tried de novo.
The trial court found from the evidence that James Peacock was the father of Rosie Peacock, and denied probate of the will in so far as it attempted to devise restricted lands for the reason the same had not been approved as provided by section 23 of the act of Congress approved April 26, 1903, and amended by the act of May 27, 1908. The evidence is uncontradicted that James Peacock and the mother of Rosie Peacock were married in the year 1890. That in November, 1894, James Peacock was convicted of assault by the Cherokee tribal court and was confined in the penitentiary until the 22d day of June, 1899. That Rosie Peacock was born about December 25, 1897, although this date is not exactly certain. There is evidence in the record that Lizzie Peacock visited her husband while he was in the penitentiary; that he escaped from the penitentiary upon several occasions.
The evidence further disclosed that Rosie Peacock was enrolled by the Dawes Commission as a full-blood, and as the daughter of James Peacock and Lizzie Peacock. At the time of enrollment Lizzie Peacock testified that James Peacock was the father of the child. James Peacock at the trial of this case testified that while he was in jail his wife often visited him and he upon those occasions slept with her.
To reverse the judgment of the trial court the plaintiff in error contends that the court erred in rejecting certain evidence regarding the illegitimacy of Rosie Peacock and erred in holding James Peacock was the father of Rosie Peacock.
The defendant in error, however, contends that under and by virtue of sections 4364 and 4366, Rev. Laws 1910, the plaintiff in error is prohibited from disputing the presumption that Rosie Peacock was a legitimate child, she being born in wedlock. Section 4364 provides as follows:
"All children born in wedlock are presumed to be legitimate."
Section 4366, Rev. Laws 1910, provides:
"The presumption of legitimacy can be disputed only by the husband or wife, or the descendant of one or both of them. Illegitimacy, in such a case, may be proved like any other fact."
S.A. Miller is the sole executor of the will, and the will by its terms bequeaths all of the property to Catherine Miller. Neither the said S.A. Miller nor Catherine Miller is a descendant of Lizzie Peacock deceased, or James Peacock. The first question for consideration is, Can the collateral heirs dispute the presumption that a child born in wedlock is legitimate? The statute says not.
The state of California has a statute identical with section 4366, and the Supreme Court of that state in the case of Ex parte Madalina, 164 P. 348, held that under and by virtue of the above section of the statute, *Page 239 
no one could question the legitimacy of a child except the persons designated in the statute, and in the opinion stated as follows:
"Section 195 of the Civil Code, * * * declares that the presumption of the legitimacy of a child born in wedlock can only be raised by the husband or wife or the descendants of one of them. This is the declared policy of this state, and is simply the adoption of a rule prevailing generally in all civilized communities."
And again the court stated as follows:
"Public policy and common decency are opposed to the bastardizing of children born in wedlock against the wishes and perhaps against the protest of their putative parents. If neither the husband nor the wife to an existing marriage desires to raise any question of the legitimacy of a child born during its existence, the best interests and welfare of society will be promoted if the state likewise declines to intervene in raising that question. It will appear, too, that the welfare, comfort, and happiness of innocent children are, under this policy of the state, best conserved as they are protected against the stigma of illegitimacy, or aspersions cast upon their birth being raised by third persons, either through excessive zeal or actuated by sinister motives in criminal proceedings brought in the name of the state."
The state in that case attempted to prove that a child, although born in wedlock, was an illegitimate child. The court held under the statute this question could only be raised by the husband or wife or the descendants of one or both of them. The statute is plain and unambiguous, and we know of no reason why the same should not be applied to this case.
It is, however, contended by the plaintiff In error that the case of In re McNamara Estate (Cal.) 183 P. 552, holds to the contrary; but such is not the case. This section of the statute had no application to the facts in that proceeding, nor was this portion of the statute discussed by the court. In that case the child or descendant of the mother was the person who disputed the presumption, and the court in the opinion did not even refer to the portion of the section of the statute that deals with this question. The cases relied upon by plaintiff in error are all cases where the facts do not make section 4366, supra, applicable. We therefore conclude that under and by virtue of sections 4364 and 4366, Rev. Laws 1910, children born in wedlock are presumed to be legitimate, and this presumption of legitimacy can be disputed only by the husband or wife or the descendants of one or both of them. It being admitted that the child was born in wedlock, and Catherine Miller, the beneficiary named in the will, nor S.A. Miller, the executor named in the will, is either the husband or wife, or a descendant of one or both of them, they nor either of them can dispute the presumption of legitimacy. Therefore the court did not err in holding that James Peacock was the father of the deceased, Rosie Peacock.
It is next contended that the court erred in holding that the will was not acknowledged before or approved by the U.S. Commissioner or the judge of the county court of any county in the state of Oklahoma. In the trial of the case counsel for plaintiff in error was asked by the court regarding whether the will was approved as provided by the act of Congress heretofore referred to, and counsel for plaintiff in error stated as follows:
"No, sir; this will is not acknowledged or approved, and our contention is Peacock is not the father of the girl."
The will does not purport to be approved as required by the act of Congress above referred to, and plaintiff in error cites no authorities to support the contention that it was, and having admitted in the trial it was not, we think there is no merit in this contention, nor in the other assignments of error.
For the reason stated, the judgment of the trial court is affirmed.
JOHNSON, V. C. J., and KANE, KENNAMER, NICHOLSON, COCHRAN, and BRANSON, JJ., concur.