In the Matter of the ESTATE of Robert A. MARRIOTT, Deceased.

No. 45624.

Supreme Court of Oklahoma.

July 10, 1973.

R. L. Christian, Frederick, for proponent.

Wilson & Massad, by Anthony M. Massad, Frederick, for contestant.

HODGES, Justice.

This controversy arose following the death of Robert A. Marriott, Jr. (Robert). His brother, Jesse H. Marriott (Proponent) filed an application for appointment as administrator of decedent's estate joined by the other brother and sister of decedent.

William Arthur Jones, nee Marriott, (Contestant) filed his objections to the appointment based upon his allegation that he was the legitimate son of Robert A. Marriott, Jr., and as such was entitled to a prior right of appointment under 58 O.S. 1971 § 122.

Contestant introduced his official birth certificate at the hearing contesting proponent's application for letters of administration. The birth certificate named Robert as the father. The mother was shown to be Mildred Jones. At the time of the birth of contestant, Robert was married to Juanita Marriott (Juanita).

After the birth of contestant, Juanita took the infant to the Marriott farm. (She and Robert had made their home with his parents on their farm while Robert was serving in the armed forces). Robert returned from the service, and lived with Juanita and contestant for a few months, until she sued him for divorce. Juanita was given custody of the "foster son" with visitation rights accorded to Robert, although no child support was awarded by the decree of divorce.

Juanita remarried, and moved to California. She took contestant with her. After a period of apparent financial hardship, contestant was returned to the Marriott farm by Robert's sister-in-law. She testified that when she picked him up in California, he was known as William Arthur Marriott. Contestant was subsequently cared for and adopted by Georgia Jones, Robert's sister.

The evidence at the hearing was that a father-son relationship existed between Robert and contestant, and that this relationship was well known in the community. There was no testimony by any of the witnesses that Robert was not the father of the contestant. The most negative testimony was that of Georgia Jones. She testified that she didn't know who contestant's father was, although his natural mother was her adopted daughter, and therefore, a neice by adoption of Robert. Contestant refuted her testimony. He stated that Georgia Jones gave him the birth certificate prepared by the hospital where he was born which named Robert as the father.

The father-in-law of contestant testified that Robert had acknowledged paternity of contestant to him, and that he and Robert had cooperated in the payment of the college education of contestant and his daughter after their marriage.

The trial court held that: because of the presumption of a child born in wedlock being legitimate; the prima facie evidence of the official birth certificate; and the lack of sufficient evidence before the court to show that contestant was not legitimate; contestant was the legitimate son of decedent and was entitled to be appointed as administrator of the estate, because children have a prior right of appointment under the statute, 58 O.S.1971 § 122. The court appointed a third party as administrator, however, because of a reservation granted to proponent and pending appeal.

The decision of the trial court was affirmed by the Court of Appeals. Proponent appealed from the denial of its motion for a reversal or judgment and for a new trial.

The statute, 10 O.S.1971 § 1 which the trial court relied on in reaching its decision, provides:

"All children born in wedlock are presumed to be legitimate."

◼ Apparently the trial court and the Court of Appeals in construing the above statutory provision with other evidence ad-

duced, concluded that a child may be presumed to be legitimate if its father is married, although not necessarily to the child's natural mother.

We find this concept untenable, but find the judgment of the trial court is supported by other statutory law and evidence in the record.

It is obvious that children "born in wedlock" means children born while the purported parents are married to one another, not while the father is married to someone else. As used in the statute, "wedlock" refers to the status of the parent of the child in relation to each other. A natural child of a married man, but borne by one other than his spouse is a child born out of wedlock within the purview of the statute. See Pursley v. Hisch, 119 Ind.App. 232, 85 N.E.2d 260, 271 (1949), for reverse proposition involving married woman.

Under the facts disclosed at the hearing, contestant, at birth, was an illegitimate child. The question to be answered is whether the acts of the putative father were sufficient to legitimize him for inheritance purposes.

■ The Oklahoma statute which pertains to inheritance by illegitimate children, 84 O.S.1971, § 215 provides:

"Every illegitimate child is an heir of the person who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child * * * ."

Robert died intestate without ever having acknowledged his paternity in writing. At first impression, this would seem to preclude the heirship of contestant. However, the statute, supra, must be construed with 10 O.S.1971 § 55 which provides:

"The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of his birth. The status thus created is that of a child adopted by regular procedure of the court."

Although the court in Harris v. Gammill, 108 Okl. 288, 236 P. 878 (1925) found that there had not been substantial compliance with either of the statutes in question, it held in its syllabus that under the statutes (which were subsequently re-enacted as 10 O.S.1971 § 55 and 84 O.S.1971 § 215) that an illegitimate child cannot inherit any portion of the putative father's estate *unless* such putative father acknowledges such child as his own, receives it in his family with the consent of his wife, and otherwise treats it as his legitimate child, *or* acknowledges the paternity of the child in writing in the presence of a competent witness. This case stands for the proposition that there are two options open to the father of an illegitimate child in order to legitimize it for inheritance purposes.

Jones v. Snyder, 121 Okl. 254, 249 P. 313 (1926) holds that: if the father of an illegitimate child takes the child into his own home; cares for and provides for the child; treats it as his own; and by his acts and conduct manifests acknowledgment that the child is his, such acts and conduct are sufficient compliance with the statute to legitimize the child, whether or not the father in so many words publicly proclaims the child as his.

It appears from the record that William Arthur Jones, nee Marriott was legitimized by Robert's conduct both publicly and by his actions. Many witnesses testified to the apparent father-son relationship which was purported to be common knowledge in the community. Robert acknowledged paternity to contestant's father-in-law and with him contributed financially to contestant's college education.

■ The acts of Robert legitimized contestant. The legitimization dated back to the date of contestant's birth, thus mak-

ing contestant his heir. Even though there was an apparent adoption by Georgia Jones, this does not preclude his right to inherit from his natural father. Natural children, even after adoption are eligible to inherit both from their natural and adoptive parents. We have no statutory provisions which limit an adopted child's statutory right to inherit from its natural parent. See Stark v. Watson, 359 P.2d 191, 192 (Okl.1961).

As the legitimized son of Robert A. Marriott, Jr., contestant has a prior right to letters of administration under 58 O.S. 1971 § 122. The judgment of the trial court is affirmed, with directions to issue letters of administration to the contestant.

All Justices concur.

## SUPPLEMENTAL OPINION ON RE-HEARING

IRWIN, Justice:

On rehearing, proponent contends that if contestant were legitimized by Robert's conduct pursuant to 10 O.S.1971, § 55, under the specific language of that statute, contestant's status was "that of a child adopted by regular procedure of court." Proponent then argues that contestant, having the status of an adopted child, lost the right to inherit from Robert, his first adoptive parent, by reason of the subsequent adoption of contestant by Georgia Jones.

In In re Talley's Estate, 188 Okl. 338, 109 P.2d 495, we held:

"Where a child was adopted by first adoptive parents and was thereafter adopted by second adoptive parent prior to death of either of first adoptive parents, who thereafter made a mutual will in which he was not provided for, he did not inherit from the estate of one of said first adoptive parents thereafter dying."

In Talley we said that one cannot occupy the status of an adopted child to two dif-

ferent sets of adoptive parents at the same time, while, on the contrary, he can be and is the adopted child of his adoptive parents and the natural child or issue of his natural parents at the same time.

Sec. 55, supra, as originally enacted provided that if the father of an illegitimate child complied with the requirements therein set forth and otherwise treated the child "as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth". The statute was amended in 1911 by adding the following language: "The status thus created is that of a child adopted by regular procedure of court."

In Colpitt v. Cheatham, Okl., 267 P.2d 1003, we said that the result of the 1911 amendment was " * * * merely to affect the status of the child legitimated with regard to inheritance. Prior to such amendment, by the terms of section 55 a legitimated child was 'deemed for all purposes legitimate from the time of its birth.' After such amendment, its status was that of an adopted child, and it could not inherit property expressly limited to the heirs of the body of the parent who was not a natural parent; neither could it take from the collateral or lineal kindred of such parent by right of representation. By this interpretation, the amendment made the status of a child with reference to inheritance from his father similar to that of a child acknowledged pursuant to the requirements of 84 O.S.1951 § 215, when the natural parents shall not have intermarried."

In Jameson v. Jameson, 111 Okl. 82, 238 P. 426, we said the 1911 amendment "consists of the one sentence: 'The status thus created is that of a child adopted by regular procedure of court.' That status is fixed by section 8057, [§ 55, supra] which, as to inheritance, gives it the same status *as if born to them in wedlock, except that he shall not be capable of taking property*

*expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation. * * *"* (emphasis ours).

The italicized portion appears to follow the language in 10 O.S.1951 § 52, which was repealed in 1957. We find it unnecessary to consider the effect of our Uniform Adoption Act of 1957 [10 O.S.1971 §§ 60.-1–60.23], as such enactment is not material to the issue here presented.

In In re Chews Estate, 200 Okl. 317, 193 P.2d 572, we said the policy of the law is to favor legitimation of children born out of wedlock, and by statute and judicial construction, the severity with which the law formerly dealt with such unfortunates has been tempered and softened.

Adoption, properly construed, refers to people who are strangers to the blood; legitimation to persons where the blood relation exists. Allison v. Bryan, 21 Okl. 557, 97 P. 282. Under § 55, supra, the status created is not only that of a child adopted by regular court proceedings but the child is deemed legitimate from the time of its birth. Our general adoption statutes do not contain the language that an adopted child "is deemed legitimate from the time of its birth".

Assuming, arguendo, that subsequent to the legitimizing of contestant by his father, contestant was validly adopted by Georgia Jones, at the time of the adoption by Georgia Jones, contestant not only had the status of an adopted child of Robert but he was also deemed for all purposes the legitimate son of Robert from the time of his birth. Being the legitimate son of Robert, the subsequent adoption of contestant by Georgia Jones did not deprive contestant of the right to inherit from his father.

DAVISON, C. J., WILLIAMS, V. C. J., and •BERRY, HODGES, LAVENDER, BARNES and SIMMS, JJ., concur.