526 P.2d 930 (1974)
In the Matter of the ESTATE of Allison LaSARGE, Deceased.
Melvine KINCER, Appellant,
v.
Harold LaSARGE, Appellee.
No. 46917.
Supreme Court of Oklahoma.
September 10, 1974.
Charles R. Gray, W.N. Palmer, Pawhuska, for appellant.
Shoemake & Briggs, Pawhuska, for appellee.
*931 HODGES, Justice.
The question to be decided is whether or not the appellant is the legitimized daughter of Allison LaSarge, deceased. If she is, she is the sole heir, and inherits the whole of his estate. If she is not, the estate, goes to the brothers and sisters of decedent.
The appellant, Melvine Kincer (Melvine), was born on August 6, 1928, to Mary Stubbs in Kay County, Oklahoma.
She was given the name of Melvine LaSarge and carried that name, and no other, until she married Kincer.
After the birth of Melvine, a bastardy proceeding was begun in Kay County, Oklahoma, against Allison LaSarge (Allison) charging him with being her father and asking for her support. Allison plead guilty to the charge and on September 1, 1928, he was decreed to be the father of Melvine and was ordered to pay the mother $1,000.00 in payments of $25.00 a month.
Harold LaSarge made the payments on behalf of his brother, Allison, whom he supported for most of his life because of Allison's physical handicaps, and because Harold was on the Osage roll, but Allison had been born two years too late to qualify.
In 1932, the $1,000.00 had been paid, and the payments stopped. Then by request of Mary Stubbs, the mother, Allison took the child. Allison was then living in Tulsa with his brother, Harold, and Harold's wife Marie. Marie picked up the child and brought her to their home. Shortly thereafter, the family, (Harold, Marie, Allison and Melvine) moved to Pawhuska where they lived for approximately two years. Melvine was enrolled in the Pawhuska schools. Allison was dependent on Harold for support and Harold assumed the obligation of supporting Melvine until her mother reclaimed her.
Melvine was baptized in the Catholic Church in Pawhuska on December 21, 1935. Marie and Melvine testified that Allison was present. Marie testified Allison told the priest that he was Melvine's father, and that it it was necessary to have permission of one of the parents before the priest would baptize the child. The baptismal certificate was admitted into evidence. It designates Allison LaSarge and Mary Stubbs as the parents of Melvine Bernadette LaSarge.
Melvine's mother returned for her in 1936. Her mother had married, and she continued to live with her mother and step-father until her marriage to Kincer. Shortly after returning to her mother's home, the family moved from Kay County to New Mexico.
In 1940 or 1941, Melvine visited with her father for about two weeks in Fairfax, Oklahoma. At that time, he was living with Harold and Harold's second wife, Josephine. *932 He gave money to Josephine to buy clothes for her, and introduced her as his daughter to Josephine.
Many letters were written by the appellee, Harold LaSarge, to Melvine in his behalf, and in behalf of his brother, Allison. Allison could not write, and also suffered from a severe visual defect as the result of having had measles as a child. Some of those letters were written in 1963 and 1964. These were saved by Melvine and received in evidence. In these letters, Harold calls himself her uncle, and Allison her father, and expresses terms of endearment of her father and uncle toward Melvine and her family. He recounts many of her "Dads" activities, and says that he has instructions from her Dad to say hello, and to kiss her children for him. He also recounted her birth date as being August 6, 1928, and listed her pedigree at 1/2 Kaw, 1/8 Pottawatamie, and 3/32 Osage, with the rest French. In one of the letters, he promised to visit in March of 1964 in which he said that Melvine's children will "get to see their Grandpa and Uncle." This letter also included an X by "your Dad", the signature.
It is only after Allison's death that Harold denied Allison's paternity.
Allison died on July 1, 1966. Harold was appointed administrator of his estate, which consisted of a fractional Osage headright. He did not list Melvine as an heir. Melvine petitioned the court for determination of heirship and distribution of estate where she prayed to be adjudged the sole and only heir at law of Allison LaSarge.
Appellee urges and the court found that Allison did not publicly acknowledge Melvine as his daughter. We do not agree.
The policy of the law is to favor legitimation of children born out of wedlock. The severity with which the law formerly dealt with illegitimate children has been tempered both by statute and judicial construction. The effect of legitimating a child under 10 O.S. 1971 § 55 is to make such child legitimate from birth and to give the child the right of inheritance. In Re Chew's Estate, 200 Okl. 317, 193 P.2d 572, 574 (1948).
There are two ways that an illegitimate child may be legitimized. One is to acknowledge paternity in writing in accordance with 84 O.S. 1971 § 215. The other is to comply with the provisions of 10 O.S. 1971 § 55. In Re Estate of Marriott, 515 P.2d 571, 573 (Okl. 1973).
It is provided by 10 O.S. 1971 § 55 that:
"The father of an illegitimate child by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such, and such child is thereupon deemed for all purposes legitimate from the time of its birth. The status thus created is that of a child adopted by regular procedure of court. * * *"
There is no express definition in the statute of the phrase "public acknowledgment", but the phrase has been generally employed in the ordinary or commonly understood sense of disclosing facts of paternity without concealment to relatives, friends, acquaintances, and other third persons. It is generally held that the recognition need not be universal or so general and public as to to have been known by all. Trier v. Singmaster, 184 Iowa 307, 167 N.W. 538, 541 (1918).
We cited Jones v. Snyder, 121 Okl. 254, 249 P. 313 (1926) in In Re Estate of Marriott, 515 P.2d 571, 573 (Okl. 1973), for the holding that: if the father takes the child into his own home; cares and provides for the child; treats it as his own; and by his acts and conduct manifests acknowledgment that the child is his; such acts and conduct are sufficient compliance with the statute to legitimize the child, whether or not the father in so many words publicly proclaims the child as his.
In this case, the public record of the plea of guilty to the bastardy proceeding was introduced.
The clerk of the district court is required to keep an appearance docket, a *933 trial docket, a journal, a judgment docket, and an execution docket, by the terms of 12 O.S. 1971 § 22, and to enter all pleadings under 12 O.S. 1971 § 23. It is provided by 12 O.S. 1971 § 502 that the books and records required by law to be kept by the county clerk may be received in evidence in any court.
A record is a "public record" within the purview of the statute if it is a record which a public officer is required to keep and if it is filed in such a manner that it is subject to public inspection. See Douvas v. Newcomb, 267 P.2d 600 (Okl. 1954).
It would seem that the plea of guilty was sufficient to constitute public acknowledgment. It is a matter of public record regardless of the other actions of decedent.
However, it also appears from the record that Melvine Kincer nee LaSarge was legitimized by Allison's conduct both publicly and by his actions. Many witnesses testified to the father-daughter relationship which was purported to be common knowledge in the family, and in the community. Allison acknowledged paternity repeatedly to: Harold's wife, Marie, the priest who baptized Melvine, the court in bastardy proceedings, his half-sister Lois Revard, Mrs. Rogers, his neighbor, Josephine McClure, Harold's second wife, and to merchants in Pawhuska.
Appellee also asserts that Melvine was not legitimized, because Allison did not have a home to take her into, and that after he married (a very brief relationship) she was not taken into the home of his wife.
In the case of In Re Buffington's Estate, 169 Okl. 487, 38 P.2d 22 (1934) this court held that where the unmarried father made his home with his aunt, and there received and treated the child as his own, it was irrelevant that the father later married, and did not receive the child into the family with the consent of his wife. The court held that:
"The law does not provide any definite time that an illegitimate child must remain in the family of the father, in order to constitute an adoption under section 8057 C.O.S. 1921 (10 O.S. 1971 § 55). The adoption is complete when the father publicly acknowledges the child as his own, receives it as such into his family, and otherwise treats it as if it were a legitimate child. The subsequent marriage of the father to a woman other than the mother of the child does not annul an adoption once made under the law."
Therefore, receiving a child into his family implies that where there is an established home, an actual physical acceptance of the child into such place, even though such acceptance or receiving is only for a short duration is adequate.
Allison's actions were more than sufficient to meet the statutory requirements of adoption of illegitimate child by her father as set forth in 10 O.S. 1971 § 55. We find that Melvine Kincer, is the legitimized daughter of Allison LaSarge, and as such is the sole and only heir at law of Allison LaSarge.
The appellee has filed a cross-petition in error alleging that the trial court erred when it refused to strike the testimony of three out-of-state witnesses who were present and available, and offered for cross-examination at the time of the hearing, but refused to return to Oklahoma for additional proceedings. The trial court held that it was without authority to compel such witnesses to return and overruled the alternative motion that their testimony be stricken. We find that this was not error. It is provided by 12 O.S. 1971 § 390, that a witness shall not be obliged to attend for examination on a trial of a civil action except in the county of his residence, adjacent county, or where he may be when the subpoena is served upon him unless he is subpoenaed by any state department, board, commission, or legislative committee authorized by law to issue subpoenas.
*934 No authority is cited for the proposition that such testimony be stricken. Appellee was given the opportunity to examine the witnesses at the time of the hearing. The proposition is without merit.
Reversed.
All Justices concur.