In the Matter of the ESTATE OF Edwin Douglas RAULSTON, Deceased.

Barbara ASBILL, Appellant,

v.

Wanda June YKEMA and Roberta J. Raulston, Appellees.

No. 73251.

Court of Appeals of Oklahoma, Division No. 1.

Sept. 25, 1990.

Rehearing Denied Nov. 20, 1990.

Greg Julian, Stamper, Otis & Burrage, Antlers, for appellant.

J. Frank Wolf, III, Kile, Rabon & Wolf, Hugo, for appellees.

## MEMORANDUM OPINION

BAILEY, Judge:

Appellant Barbara Asbill (Barbara or Appellant) seeks review of the Trial Court's order denying Barbara's Petition for Letters of Administration, by which Barbara sought appointment of herself, alleged daughter of Decedent Edwin Douglas Raulston (Decedent), as administratrix of the Estate of Decedent. The Trial Court found

that Barbara was not the daughter of Decedent, and that Barbara was not therefore entitled to Letters of Administration as requested. In this appeal, Barbara asserts (1) Appellees Wanda June Ykema, Decedent's sister (Ykema), and Roberta J. Raulston, Decedent's surviving spouse (Roberta, or collectively Appellees), have no standing to challenge Barbara's status as child of Decedent, and (2) under several subpropositions, that the evidence clearly showed Barbara to be, and the law presumes her to be, the child of Decedent, entitling her to letters of administration of Decedent's estate.

Decedent and Lucy Bluebell Milner (Bluebell), although apparently under legal age, married in 1937. By decree dated February 19, 1941, Decedent and Bluebell, then having no children, divorced in Oklahoma County, Oklahoma. On August 29, 1941, Bluebell married James Elmer Barnett (Elmer) in Sevier County, Arkansas. However, at the time of Bluebell's marriage to Elmer, Elmer was still married to another; by decree dated November 10, 1941, Elmer divorced his other spouse. Although there appears nothing in the record to indicate that Bluebell and Elmer ever divorced, on July 2, 1942, Bluebell and Decedent remarried in Washington County, Mississippi. Three months later, on October 11, 1942, Bluebell gave birth to Appellant Barbara. Barbara's Birth Certificate, issued by the State of Mississippi, listed Barbara's name as Barbara Annette *Barnett* and Elmer as father.

On July 28, 1943, Bluebell died. Decedent, being called to active duty in World War II and apparently having no known relatives, sent Barbara to live with Barbara's maternal grandparents, the Milners, in Swink, Oklahoma. Barbara testified at trial that the Milners "adopted" her, but there appears no record of such an adoption. On or about October 2, 1943, the Milners, listing themselves as Barbara's grandparents, applied for and received an amended Mississippi birth certificate for Barbara, listing Decedent as Barbara's father.

Decedent died apparently intestate January 26, 1986. In August, 1988, Barbara filed her Petition for Letters of Administration of Decedent's estate, alleging failure to locate a Last Will of Decedent, her status as Decedent's daughter, and praying for her appointment as Administratrix of Decedent's estate. In September, 1988, Appellees filed their objection to Barbara's Petition for Letters, and Ykema filed a Petition for Letters, praying for appointment of her as Administratrix.

At hearing, Barbara testified that Decedent treated her and referred to her as his daughter, and that Barbara had lived with Decedent for a short period after Barbara's marriage. However, Ykema's husband and another cousin testified that Decedent denied paternity of Barbara. After hearing the evidence, the Trial Court found Barbara was not the daughter of Decedent, was not entitled to Letters of Administration, and denied Barbara's Petition therefor. Barbara appeals as aforesaid.

█ We initially find Appellees to be proper parties to challenge Barbara's Petition for Letters. Clearly, Roberta, as Decedent's surviving spouse, and Ykema, as Decedent's sister, are not only interested in the estate as statutory heirs of the intestate Decedent under 84 O.S. 1981 § 213, but are also thereby sufficiently "interested" in the estate not only so as to permit either of them, under 58 O.S. 1981 § 122, to Petition for Letters in their own right, as Ykema did, but also so as to permit either of them to contest Barbara's Petition for Letters under 58 O.S. § 129. Barbara's entitlement, if any, to Letters of Administration is governed by § 122, and any preference to appointment she might enjoy under § 122 is dependent on her status as a legitimate child of Decedent. See also, *In re Estate of Marriott*, 515 P.2d 571, 574 (Okl.1973) (legitimized son of Decedent has prior right to letters of administration over brother of Decedent under § 122); *In re Pico's Estate*, 52 Cal. 84 (1877) (illegitimate child of decedent is not entitled to administer the estate as against brother of decedent). Because Barbara's entitlement to Letters of Administration is contingent upon her status as a legitimate child of Decedent, we find Appellees, as interested

parties, have standing under § 129 to contest Barbara's alleged priority status as Decedent's child. To hold otherwise would be to erect an absolute barrier to those interested in an estate to challenge the mere allegation of child-of-decedent status.

■ However, the fact that we find Appellees have standing to contest Barbara's Petition for Letters is not conclusive of the case. In her second proposition, Barbara asserts that her status as a legitimate child of Decedent is presumed by Oklahoma law, she having been born during the subsequent marriage of Bluebell and Decedent, that because neither Ykema nor Roberta are "lineal descendants" of either Bluebell or Decedent, and because neither Bluebell nor Decedent have living "lineal descendants," her presumed status as child of Decedent may not be challenged. 10 O.S. 1981 §§ 1, 3.[1] Appellees respond, asserting that Barbara was conceived during the marriage of Bluebell and Elmer, and that Barbara should therefore be presumed to be the legitimate child of Elmer. 10 O.S. § 2.[2] See also, *Roods v. Roods,* 645 P.2d 640 (Utah, 1982) (child conceived in previous marriage, but born during subsequent marriage, deemed legitimate child of prior marriage for purposes of determining paternal support obligation). However, and

as noted in *Roods,* there exists no real question as to Barbara's legitimacy: she is either the presumed legitimate child of Elmer, or she is the presumed legitimate child of Decedent. *Roods,* 645 P.2d at 641–642. The determinative question presented to the Trial Court and to this Court on appeal was and is, therefore, *of whom* is Barbara presumed to be the legitimate child?

Considering the facts developed at trial, there is some evidence in the record to support the Trial Court's judgment and the argument of Appellee. Elmer, having a living undivorced wife at the time, was incapable of entering a valid marriage at the time of his marriage to Bluebell. Barbara must be deemed to have been conceived nine or ten months previous to her birth in October, 1942, that is, sometime between mid–December, 1941 and mid–January, 1942, and arguably during the period of the void and/or undissolved marriage of Elmer and Bluebell. Assuming these facts to be true, Barbara would be presumed to be the product of that marriage, either under 10 O.S. § 2[3] or 84 O.S. 1981 § 215.[4]

However, under these same facts, one might reasonably conclude that Elmer and Bluebell's marriage was void *ab initio,* that no divorce was necessary to sever

---

1. Those sections provide:

   **§ 1. Presumption of legitimacy**

   All children born in wedlock are presumed to be legitimate.

   10 O.S. § 1.

   **§ 3. Persons entitled to dispute presumption—Proof of illegitimacy—Time limit**

   The presumption of legitimacy can be disputed only by the husband or wife or the descendant of one or both of them. Illegitimacy in such case may be proved like any other fact. Provided that if the child is born during the course of the marriage and is reared by the husband and wife as a member of their family without disputing the child's legitimacy for a period of two (2) years, the presumption cannot be disputed by anyone.

   10 O.S. § 3.

2. That section provides:

   **§ 2. Children born after dissolution of marriage or before wedlock.**

   All children of a woman who has been married, born within ten (10) months after the dissolution of the marriage are presumed to be legitimate children of that marriage. A child born before wedlock becomes legitimate by the subsequent marriage of its parent.

10 O.S. § 2.
See also, *Austin v. Austin,* 418 P.2d 347 (Okl. 1966) (child conceived previous to divorce but born slightly less than nine months after entry of divorce decree deemed legitimate child of marriage of the parties); *Jackson v. Jackson,* 182 Okl. 74, 76 P.2d 1062 (1938) (normal period of gestation 280 days, ten months maximum; evidence inconclusive as to father of child; therefore, where evidence shows child conceived during marriage, although during period of husband and wife's separation, and child born within ten months of grant of divorce, child presumed to be legitimate child of marriage).

3. See also, *Sam v. Sam,* 172 Okl. 342, 45 P.2d 462 (1935) (where the parties to prior common-law marriage each remarried others while both were still living, law presumes prior common-law marriage to have been legally terminated; therefore, issue of prior common-law marriage presumed to be a legitimate child of prior common-law marriage and heir of decedent father.)

4. Section 215 of Title 84 provides in pertinent part:

   For all purposes, the issue of all marriages null in law, or dissolved in divorce, are deemed to have been born in wedlock.

non-existent marital bonds, and that because Barbara was born during the valid remarriage of Decedent and Bluebell, Barbara is presumed to be the legitimate child of that marriage under 10 O.S. § 1.[5] Further, there is some authority in support of Barbara's argument that Appellees, being neither the husband (Decedent) nor the wife (Bluebell) nor the lineal descendants of either, may not refute the § 1 presumption.[6]

Under the facts and circumstances of this particular case, we find Barbara's argument persuasive. Barbara showed that she was born during the marriage of Decedent and Bluebell, and under 10 O.S. § 1, she should be presumed to be the legitimate child of Decedent, absent clear and

84 O.S. § 215.
See also, *Hunter v. Hunter*, 206 Okl. 573, 244 P.2d 1140, 1143 (1952) (§ 215, formerly Comp.St. 1921, § 11303, applies only "where the parties in good faith, attempt to contract the marriage relation, against which some legal barrier exists, and not to a relation immorally entered into"; therefore, because father was party to undissolved marriage at time of conception and birth of child, mother and father's relationship was meretricious, and child may not take advantage of § 215 to establish her heirship of father); accord, *Byington v. Wilhelm*, 120 Okl. 190, 250 P. 1025 (1926) (held, evidence demonstrated that at time of alleged common-law agreement and conception of child, father, having living wife, was incapable of entering valid marriage, therefore, relationship was meretricious, and child may not take advantage of statutory presumption); *Page v. Roddie*, 92 Okl. 236, 218 P. 1092 (1923) (Comp. St., 1921, § 11303 [now § 215] applies only where second marriage is duly solemnized, ceremonialized and/or consummated; held, evidence insufficient to establish common-law bond between mother and putative father, therefore relationship was meretricious, and statute has no application.) But see, *Atkins v. Rust*, 168 Okl. 645, 33 P.2d 799 (1934) (held, *In re Atkins' Estate*, infra, determinative, and child born of void marriage deemed legitimate child of parties and inherits from father as though born in wedlock); accord, *Jones v. Hyndman*, 160 Okl. 61, 15 P.2d 582 (1931) (held, *In re Atkins' Estate*, infra, determinative); *In re Atkins' Estate*, 151 Okl. 294, 3 P.2d 682 (1931) (held, evidence supports finding that father, although having living undivorced spouse at the time, "in good faith attempted to enter into marriage relation," and thus, children of marriage deemed children and heirs of father); *Copeland v. Copeland*, 73 Okl. 252, 175 P. 764 (1918) (statute has no application to issue of meretricious relationship, but here, where parties in good faith entered marriage relationship, void because husband had living undivorced spouse, held, child of relationship deemed legitimate and inherits as though born in wedlock); *Brokeshoulder v. Brokeshoulder*, 84 Okl. 249, 204 P. 284 (1922).

5. See, footnote 1. See also, *Whitney v. Whitney*, 192 Okl. 174, 134 P.2d 357 (1942) (marriage void *ab initio* because of legal disability of one of the parties thereto does not require decree or judgment of court to make the marriage void

and/or to restore the parties to their original status); *Secondine v. Secondine*, 311 P.2d 215 (Okl.1957) (child born in wedlock, whether conceived before or after marriage, is presumed to be the child of the husband under 10 O.S. § 1, and such presumption may be refuted only by strong, satisfactory and conclusive evidence that husband did not have access to mother of child at the time of conception); *In re Asbury's Estate*, 192 Okl. 440, 136 P.2d 913 (1944) (where alleged child shows her birth within 274 days of marriage and cohabitation of deceased and child's mother, evidence of purported illegitimacy insufficient to overcome presumption of legitimacy, and child entitled to distributive share of decedent father's estate.) But see, *Greenleaf v. Greenleaf*, 293 P.2d 316 (Okl.1955) (child fails to demonstrate that he was born "in wedlock," and evidence demonstrates that child's mother was never married to putative father; held, sufficient evidence introduced to overcome presumption of legitimacy, and putative child precluded from inheriting by representation from alleged paternal grandfather's estate.)

And see, *Mistletoe Express Svc. v. United Parcel Svc., Inc.*, 674 P.2d 1 (Okl.1983) ("Legislatively mandated irrebuttable presumptions, once established, fall into the category of procedural law as distinguished from substantive law because they presuppose a universal fact or truth and preclude the opportunity to present evidence to the contrary"); *Smittle v. Illingsworth*, 373 P.2d 78 (Okl.1962) ("A presumption of law is a mandatory deduction which the law expressly directs to be made from particular facts, while a presumption of fact is synonymous with 'that mental process by which the existence of one fact is inferred from proof of some other fact or facts which experience shows it is usually associated by succession or coexistence'"); *Sam v. Sam*, 45 P.2d at 466, footnote 3 (where valid common-law marriage is established by sufficient direct and circumstantial evidence, the litigants may not rely on presumptions contrary to the established facts).

6. See, 10 O.S. § 3, footnote 1; see also, *Winget v. Winget*, 202 Okl. 298, 213 P.2d 288, 290 (1949); *Jackson v. Jackson*, 76 Okl. at 1066; *In re Davis' Estate*, 169 Okl. 133, 36 P.2d 471, 473, (1934); *In re Tinker's Estate*, 91 Okl. 21, 215 P. 779, 781 (1923); *In re Peacock's Will*, 88 Okl. 237, 212 P. 989, 990–991 (1923).

convincing proof to the contrary.[7] Neither of Appellees fall within the class of persons allowed to dispute the presumption of legitimacy under 10 O.S. § ?.[8] This being the case, and notwithstanding the Trial Court's judgment in accord with at least some of the evidence introduced, we find Appellees, not being within the class of persons entitled to dispute the presumption of legitimacy, should not have been permitted to introduce their evidence contradicting Barbara's showing of coverage within the § 1 presumption. Accordingly, Appellees' objection to Barbara's Petition for Letters should have been denied, and the Trial Court's ruling to the contrary should be reversed.

The order of the Trial Court granting Appellees' objection to Barbara's Petition for Letters of Administration is therefore REVERSED, and the cause REMANDED for further proceedings not inconsistent herewith.

ADAMS, P.J., and MacGUIGAN, J., concur.

---

**7.** See, footnotes 1, 5.

**8.** See, footnote 6. See also, *In re Peacock's Will*, 212 P. at 990–991.