2002 OK 100

**In the Matter of the ESTATE OF Michael Dennis TYTANIC, Deceased.**

**Joseph Charles Tytanic, Petitioner–Appellant,**

v.

**Phillip James Tytanic, Respondent–Appellee.**

**Nos. 96,818, 96,817.**

Supreme Court of Oklahoma.

Dec. 17, 2002.

them in said appeal concerning the reasonableness of the amount of fees awarded.

Charles L. Fagin, Fagin, Fagin & Nixon, Oklahoma City, for Appellant.

J. Michael Entz, Law Offices of J. Michael Entz, Oklahoma City, and James L. Menzer, Menzer Law Offices, P.C., Blackwell, for Appellee.

## OPINION

WATT, Vice Chief Justice.

### FACTS AND PROCEDURAL BACKGROUND

¶ 1 The decedent, Michael Dennis Tytanic, was involved in a common law relationship with Brenda Tytanic from 1969 until the parties were divorced on January 15, 1975. Appellee, Phillip Tytanic was born on February 15, 1974. Brenda Tytanic obtained a birth certificate for Phillip Tytanic, which stated that Michael Tytanic was Phillip Tytanic's father.

¶ 2 On April 15, 1976, decedent sought a modification of the terms of the divorce decree. In his motion to modify decedent alleged, in a verified pleading, that Brenda Tytanic had concealed an adulterous relationship from him, that Brenda Tytanic had prevented him from obtaining a record of Phillip Tytanic's blood type, and that were he able to obtain that information it would prove that Phillip Tytanic was not his natural child. Based on these allegations, decedent sought an order from the court requiring the parties to submit to blood tests.

¶ 3 The plaintiff, Brenda Tytanic, agreed to an order of the court, which found: (1) "That there is a question of paternity of said child involved." (2) "No further consent of the Defendant shall be necessary in the event Plaintiff desires that said minor child be adopted by her present husband or other person." and (3) "In light of the wishes and desires of both parties, it would be in the best interests of the minor child of these parties to have the parental rights of the Defendant terminated and, likewise, the duty to support said minor child by said Defendant terminated."

¶ 4 Decedent died intestate on April 4, 2001. Decedent's brother, Joseph Tytanic, filed a petition for letters of administration on May 1, 2001, in which he alleged that he, his brother, and his sister were Michael Tytanic's sole heirs at law. The brother also alleged that, although Phillip Tytanic claimed to be decedent's son, he was not. In support of this allegation, the brother attached a copy of the agreed order of vacation, discussed above, to his petition for letters and prayed that the court make a factual determination as to who were Michael Tytanic's heirs at law.

¶ 5 Phillip Tytanic filed an answer (denominated a "Reply") to the brother's petition for

letters in which he alleged that he was decedent's son and sole heir. On May 30, 2001 Joseph Tytanic filed a motion to require·Phillip Tytanic to submit to DNA testing for the purpose of determining ·whether Phillip Tytanic was the natural child of the decedent.

¶ 6 The parties both filed motions for summary judgment in which the issue was whether Joseph Tytanic, as the brother of the decedent is prohibited, as a matter of law, from disputing the statutory presumption of legitimacy created by 10 O.S.2001 § 2.[1] Section 2(A)(1) provides that "a man is presumed to be the natural father of a child for all intents and purposes if: He and the child's natural mother have been married to each other and the child is born during the marriage ..." Section 2(B) provides, however, that "The presumption of paternity created pursuant to this section may be disputed pursuant to ·Section 3 of this title [10 O.S. 2001 § 3]."[2] Section 3(A) provides that § 2's presumption of paternity "may be disputed only by the husband or wife, the putative father or their descendants."

¶ 7 Phillip Tytanic claims that the brother is not one of decedent's "descendants" under § 3 and, therefore, is prohibited, as a matter of law, from having the issue of whether he is decedent's biological child determined by DNA testing. The trial court and the Court of Civil Appeals agreed. The brother, however,· claims that the facts presented in this matter entitle him to raise the issue of paternity and that, under 10 O.S.2001 § 501,[3] he is entitled to an order requiring Phillip Tytanic to provide a sample for DNA testing, or be declared not to be the decedent's heir.

¶ 8 For the reasons set out in the balance of this opinion, we hold that the brother, Joseph Tytanic, did have standing under 10 O.S. § 3 to seek DNA testing of Phillip Tytanic in order to either prove or disprove that Phillip Tytanic is the decedent Michael Tytanic's son and heir.

1. Title 10 O.S.2001 § 2 provides:

A. Except as otherwise provided by Section 215 of Title 84 of the Oklahoma Statutes, a man is presumed to be the natural father of a child for all intents and purposes if:

1. He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within ten (10) months after the termination of the marriage by death, annulment, declaration of invalidity,· divorce or dissolution, or after a decree of separation is entered by a court. A child born before wedlock becomes legitimate by the subsequent marriage of his parents even if the marriage is, was or could be declared invalid. Any child born within the ten-month period specified in this subsection which is born during a subsequent marriage to another person shall be presumed to be the legitimate child of that subsequent marriage;

2. Before the child's birth, he and the child's natural mother have cohabitated and the child is born within ten (10) months after the termination of cohabitation. As used in this paragraph, the term cohabitation means the dwelling together continuously and habitually of a man and a woman who are in a private conjugal relationship not solemnized as a marriage according to law;

3. While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child for a period of at least two (2) years;

4. The United States Immigration and Naturalization Service made or accepted a determination that he was the father of the child at the time of the child's entry into the United States and he had the opportunity at the time of the child's entry into the United States to admit or ·deny the paternal relationship; or

5. Statistical probability of paternity is established at ninety-five percent (95%) or more by scientifically reliable genetic tests, including but not limited to blood tests.

B. The presumption of paternity created pursuant to this section may be disputed pursuant to Section 3 of this title.

2. Title 10 O.S.2001 § 3 provides:

A. The presumption of paternity created pursuant to Section 2 of this title may be disputed only by the husband or wife, the putative father or their descendants. Paternity may be established pursuant to Section 70 of this title.

B. If a child is born during the course of the marriage and is reared by the husband and wife as a member of their family without disputing the child's legitimacy for a period of at least two (2) years, the presumption.cannot be disputed by anyone.

3. Title 10 O.S. § 501 provides:

In a civil action in which paternity is a relevant fact and at issue, the court shall order the mother, child and putative father to submit to genetic testing. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require unless such individual is found to have good cause for refusing to cooperate.

## DISCUSSION

¶ 9 Title 10 O.S.2001 § 501 expressly provides that in any action where paternity is an issue "the court shall order the mother, child and putative father to submit to genetic testing." Nevertheless, the trial court and the Court of Civil Appeals held that § 501 was not available to the brother because the brother lacked "standing" under 10 O.S.2001 § 3 to challenge Phillip Tytanic's claim that Phillip Tytanic was the decedent's son. We disagree.

¶ 10 The undisputed facts of this matter show that the decedent filed a verified pleading claiming that the mother had fraudulently concealed from him that Phillip Tytanic was not decedent's son. Further, the mother agreed to an order that recognized that whether Phillip Tytanic was or was not the decedent's child was an issue and relieved decedent of all parental responsibilities. That order also expressly allowed the mother to allow the adoption of Phillip Tytanic by her then husband without the "further consent" of the defendant. These undisputed facts would support the inference that the mother agreed to the trial court's order in order to avoid allowing the decedent to learn her son's blood type.[4] Under these circumstances, we decline to interpret 10 O.S. § 3 so as to prevent the resolution of the ultimate issue: Is Phillip Tytanic the decedent's son? Further, the brother, as decedent's personal representative, stood in decedent's shoes and under the facts presented here, clearly had standing to raise the issue of Phillip Tytanic's paternity.

¶ 11 This Court analyzed the basis for 10 O.S. § 3 in *In re Peacock's Will*, 1923 OK 96, 212 P. 989. There, the Court held that a collateral heir of a decedent lacked standing to attack the testimony of the decedent's putative father that he was, indeed, the decedent's father. There, this Court held that the purpose of what is now § 3 was to prevent "the bastardizing of children born in wedlock against the wishes and perhaps against the protest of their putative parents." 212 P. at 990 (quoting with approval from *Ex Parte Madalina*, 174 Cal. 693, 164 P. 348, 1 ALR 1629, interpreting a California statute identical to § 3).[5] Decedent's successful attempt to be relieved of parental duties with respect to Phillip Tytanic on the basis that he was not Phillip Tytanic's father, and that the mother had fraudulently concealed this fact from him, clearly shows that decedent's brother was championing decedent's wishes, not countering them. There is nothing in § 3 under these circumstances that demonstrates a legislative intent to deprive the brother of the right to have the paternity issue tried as a precondition to Phillip Tytanic's inheritance of the decedent's estate. The undisputed facts would support the inference that decedent had no desire for his estate to pass to Phillip Tytanic if Phillip Tytanic was not decedent's biological son. Equally importantly, these facts would also support the inference that Phillip Tytanic could hardly have thought otherwise. Thus, the public policy that § 3 was designed to protect is not violated by the interpretation we give it today requiring that the issue of Phillip Tytanic's paternity be tried and resolved.

**4.** The concurring opinion's conclusion that this Court " 'infers' that: the mother agreed to the trial court's order to avoid allowing the defendant [the decedent] to learn her son's blood type" reveals a misapprehension of the true meaning of this Court's opinion. This opinion does not stand for the proposition that the mother waived her son's right to claim he was the decedent's son. Instead, it stands for the proposition that the decedent never waived his right to have determined the question of paternity and that the decedent's and the mother's conduct following the divorce *would* (not *does* ) support the inference that Phillip Tytanic was, indeed, not decedent's son. The fact that this inference *might* be drawn from the facts does no more nor less than demonstrate the unfairness that would inhere in construing 10 O.S. § 3 so as to prohibit the brother from having the paternity issue resolved.

**5.** The Court of Civil Appeals relied on *In re Peacock's Will* in *Matter of Estate of Raulston*, 1990 OK CIV APP 79, 805 P.2d 113. There, the court held that collateral heirs of a decedent had no standing under 10 O.S. § 3 to resist the claim of paternity of the decedent's putative daughter. Although there was no formal, sworn evidence to reflect that the decedent had denied paternity, the Court of Civil Appeals' opinion is, nevertheless, expressly disapproved to the extent it could be interpreted to reach a conclusion contrary to that which we reach here today.

¶ 12 There is another important reason for our holding that the brother has standing to seek DNA testing of Phillip Tytanic. In 1967 the Legislature passed the Genetic Testing to Determine Paternity Act, 10 O.S. 2001 §§ 501, et seq. Dramatic advances in genetic testing have made it possible to determine paternity with nearly one-hundred per-cent accuracy. We hold, therefore, that the Act applies to the issue of paternity in this matter and the trial court is directed to enter an order under § 501 of the Act requiring Phillip Tytanic to submit to DNA testing. The undisputed facts in the record before us convince us that both common sense and fairness require that the issue of whether Phillip Tytanic is or is not decedent's son and heir be tried and decided under the Act.

CERTIORARI PREVIOUSLY GRANTED, COURT OF CIVIL APPEALS' OPINION VACATED, JUDGMENT REVERSED AND CAUSE REMANDED WITH INSTRUCTIONS.

HODGES, OPALA, SUMMERS, BOUDREAU, WINCHESTER, JJ., CONCUR.

LAVENDER and KAUGER, JJ., CONCUR IN RESULT.

HARGRAVE, C.J., DISSENTS.

KAUGER, J. concurring in result:

¶ 1 I concur in the result reached by the majority—that, under the facts presented, the petitioner-appellant, Joseph Charles Tytantic, brother of the decedent, has standing under 10 O.S.2001 § 3 [1] and 10 O.S.2001 501 [2] to seek DNA testing of Phillip Tytantic for

1. Title 10 O.S.2001 § 3 provides:
   "A. The presumption of paternity created pursuant to Section 2 of this title may be disputed only by the husband or wife, the putative father or their descendants. Paternity may be established pursuant to Section 70 of this title.
   B. If a child is born during the course of the marriage and is reared by the husband and wife as a member of their family without disputing the child's legitimacy for a period of at least two (2) years, the presumption cannot be disputed by anyone."

2. Title 10 O.S.2001 § 501 provides:
   "In a civil action in which paternity is a relevant fact and at issue, the court shall order the

purposes of establishing a paternity relationship with the decedent. I write separately to emphasize three points: 1) a mother may not, through agreement or otherwise, relieve a putative father of the obligation to support his minor child; 2) neither termination of the decedent's parental rights nor the adoption of the purported son affects the right of a child to inherit; and 3) when reviewing a cause, this Court relies on the record evidence rather than on some arbitrary "inference."

¶ 2 The majority emphasizes that the mother entered into an agreed order indicating that: paternity was an issue; adoption of the minor child could be accomplished without the decedent's consent; and the decedent's parental rights and support obligations should be terminated. Pursuant to this Court's opinion in *State ex rel. Oklahoma Dept. of Human Serv. v. T.D.G.*, 1993 OK 126, 861 P.2d 990, the mother's agreement regarding the putative father's duty of support was void as against public policy. We have recently recognized that *T.D.G.* stands for the proposition that no parent may, through settlement, agreement, or otherwise, compromise the child's right to enforce a support obligation against its parent.[3] Therefore, the agreement of the mother here is irrelevant to any right the child might have had to pursue recovery of support obligations.

¶ 3 The decedent's parental rights had been terminated. Although the termination of parental rights precluded the decedent's right to inherit from his purported child, it had no affect on the purported son's recipro-

mother, child and putative father to submit to genetic testing. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require unless such individual is found to have good cause for refusing to cooperate."

3. *Hedges v. Hedges*, 2002 OK 92, ¶ 1, —— P.3d ——. Although mandate has not yet issued in *Hedges*, the primary issue presented in the cause concerned a mother's defenses to an altered child support agreement, not the agreement or waiver of the child's right.

cal rights. Title 10 O.S.2001 § 7006–1.3 provides in pertinent part:

"A. The termination of parental rights terminates the parent-child relationship, including the parent's right to the custody of the child and the parent's right to visit the child, the parent's right to control the child's training and education, the necessity for the parent to consent to the adoption of the child, the parent's right to the earnings of the child, and the parent's right to inherit from or through the child. **Provided, that nothing herein shall in any way affect the right of the child to inherit from the parent....**" [Emphasis provided.][4]

Likewise, once the purported son was adopted, the father lost the right to inherit the son's estate. However, even the adoption does not affect the son's right of inheritance from his purported father. Title 10 O.S. 7505–2.1(L)(1) provides:

"The preadoption termination of parental rights pursuant to this section terminates the parent-child relationship, including the parent's right to the custody of the child and the parent's right to visit the child, the parent's right to control the child's training and education, the necessity for the parent to consent to the adoption of the child, the parent's right to the earnings of the child, and the parent's right to inherit from or through the child. **Provided, that this subsection shall not in any way affect the right of the child to inherit from the parent."** [Emphasis provided.][5]

¶ 4 The majority "infers" that: the mother agreed to the trial court's order to avoid allowing the decedent to learn her son's blood type; the decedent didn't want his estate to pass to a non-biological son; and that the purported son could not have assumed the father intended him to inherit. One might just as easily "infer" from the facts that: the mother would have agreed to anything to have obtained a timely resolution of the termination of parental rights and legal adoption of her son; being deemed to know the law, the father intentionally failed to execute a will so that the purported son would be the sole heir under the laws intestate; and had he wanted his brother to share in the estate, the purported father would have executed a will to ensure that result, naming the brother and specifically disinheriting the son. The possibility that different individuals might consider the same facts and draw differing "inferences" is one of the reasons that review in this Court is limited to the issues shown by the record to have actually been presented and tendered to the trial court.[6]

***

4. Matter of *Estate of Flowers*, 1993 OK 19, ¶ 0, 848 P.2d 1146.

5. See also, Matter of the *Estate of Marriott*, 1973 OK 85, ¶ 10, 515 P.2d 571 [Supplemental opinion on rehearing].

6. *Kincaid v. Black Angus Motel, Inc.*, 1999 OK 54, ¶ 23, 983 P.2d 1016; *Hughey v. Grand River Dam Auth.*, 1995 OK 56, ¶ 9, 897 P.2d 1138. See also, *Halliburton Oil Producing Co. v. Grothaus*, 1998 OK 110, ¶ 11, 981 P.2d 1244 [A reviewing court may take notice only of that record which is before it.]; *Frey v. Independence Fire & Casualty Co.*, 1985 OK 25, ¶ 7, 698 P.2d 17.